**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X

CRYSTAL MCKINNEY,

                        Plaintiff,

     - against -

SEAN COMBS a/k/a "P. DIDDY," BAD BOY
ENTERTAINMENT LLC d/b/a BAD BOY
RECORDS, BAD BOY ENTERTAINMENT
HOLDINGS, INC., SEAN JOHN CLOTHING LLC,
and UNIVERSAL MUSIC ENTERTAINMENT
GROUP, INC.

                       Defendants.

------------------------------------------------------------------------X

**Index No: 24-3931**

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

      Plaintiff CRYSTAL MCKINNEY ("Plaintiff"), by and through her attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby alleges and avers of the Defendants SEAN COMBS a/k/a "P. DIDDY," BAD BOY ENTERTAINMENT LLC d/b/a BAD BOY RECORDS, BAD BOY ENTERTAINMENT HOLDINGS, INC, (collectively Bad Boy Entertainment LLC and Bad Boy Entertainment Holdings, Inc. are referred to as "Defendants Bad Boy Records"), SEAN JOHN CLOTHING LLC, and UNIVERSAL MUSIC ENTERTAINMENT GROUP, INC. (collectively referred to as "Defendants"), alleges upon information and belief as to all other matters as follows.

**NATURE OF THE ACTION**

1. Plaintiff brings suit against Defendants pursuant to the NYC Gender Motivated Violence Act, N.Y.C. Admin. Code §§ 8-901 *et. seq*, to redress the substantial and lifetime injuries she has suffered as a result of being drugged and sexually assaulted by Sean Combs or "P. Diddy."

**JURISDICTION**

1

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 insofar as there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

3. Plaintiff is a citizen of the State of Georgia.

4. Defendant Combs is a citizen of the State of California.

5. Bad Boy Entertainment Holdings, Inc. is a domestic business corporation licensed to do business in New York and is headquartered at 1440 Broadway, 3rd Floor, New York, New York 10018.

6. Bad Boy Entertainment LLC. is a domestic limited liability company licensed to do business in New York and is headquartered at 1440 Broadway, 3rd Floor, New York, New York 10018.

7. Sean John Clothing LLC is a domestic liability company licensed to business in New York and is headquartered at 1440 Broadway, New York, NY 10018.

8. Universal Music Group Inc. is a foreign business corporation licensed to do business in New York, and is headquartered at 22200 Colorado Avenue in Santa Monica, CA 90404.

9. Venue is proper in the Southern District of New York because a substantial part of the events giving rise to the claim, including but not limited to, Defendant Combs' assault of Plaintiff, occurred in this District.

## PROCEDURAL REQUIREMENTS

## THE N.Y.C. VICTIMS OF GENDER MOTIVATED VIOLENCE PROTECTION ACT

10. The N.Y.C. Victims of Gender Motivated Violence Protection Act ("NYC Gender Motivated Violence Act") created a lookback window on March 01, 2023, which runs for two years, for survivors of gender motivated violence, allowing them to sue their abusers

regardless of when the abuse occurred. N.Y.C. Admin. Code § 10-1105(a).

11. The NYC Gender Motivated Violence Act revives any claims against "a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender has a cause of action against such party in any court of competent jurisdiction." N.Y.C. Admin. Code § 10-1104.

12. The Appellate Division has held that sexual assault is an act of gender-motivated violence under the law as "Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent." *Breest v. Haggis,* 180 A.D.3d 83, 94 (App. Div. 2019).

13. The above-described conduct of Defendant Combs, including, but not limited to, Defendant Combs's sexual assault of Plaintiff in New York City, constitutes a "crime of violence" and a "crime of violence motivated by gender" against Plaintiff as defined by the NYC Gender Motivated Violence Act.

## PARTIES

### DEFENDANT COMBS

14. P. Diddy a.k.a. Puff Daddy or Diddy is a Grammy-awarded musician, rapper and producer.

15. In 1992, P. Diddy founded Defendants Bad Boy Records.

16. In 2008, P. Diddy was the first male rapper to get a star on the Hollywood Walk of Fame.

17. In 2022, Forbes estimated that P. Diddy is one of the wealthiest hip-hop artists in America and that his net worth is over $1 billion.

18. Upon information and belief, P. Diddy has a long history of committing physical and sexual violence against women and men as documented in publicly available lawsuits and extensive media coverage.

19. On November 16, 2023, Cassie Venture, an artist signed onto Bad Boy Records, filed a suit in the United States District Court of the Southern District of New York alleging that Combs provided her with copious amounts of drugs, before sexually assaulting her.

20. On November 23, 2023, Joi Dickerson-Neal, filed suit in the Supreme Court of New York, New York County, alleging that Combs drugged her, sexually assaulted her, and filmed a "revenge porn" tape of his assault.

21. On November 23, 2023, Liza Gardener, filed suit in the Supreme Court of New York, New York County, alleging that Combs and Aaron Hall sexually assaulted her when she was a minor.

22. On December 06, 2023, a Jane Doe, filed suit in the United States District Court of the Southern District of New York alleging that when she was a minor, she was gang raped by Combs, Harve Pierre, and a third unnamed assailant.

23. On February 26, 2024, Rodney Jones, filed suit in the United States District Court of the Southern District of New York alleging that Combs sexually assaulted him and provided laced alcoholic beverages to minors.

**DEFENDANTS BAD BOY RECORDS**

24. In 1992, Combs founded Bad Boy Records, a record label which has sold over 500 million records, and where he produced records by Mary Blige, The Notorious B.I.G., and Usher.

**DEFENDANT UNIVERSAL MUSIC GROUP, INC.**

4

25. On February 06, 2003, Combs signed a distribution deal with Universal Records (now Universal Music Group) for Defendants Bad Boy Records.

26. From 2003 to 2005 and 2009 to present, Universal Music Group has and continued to distribute Bad Boy Records' catalog.

## SEAN JOHN CLOTHING LLC

27. In 1998, Combs founded Sean John, which has retail sales of over $450 million.

28. As CEO and president of the company, Defendant Combs was representing Sean John when he attended the Men's Fashion Week dinner where he met Plaintiff.

## FACTUAL ALLEGATIONS

**Plaintiff Begins Her Modeling Career**

29. At the age of seventeen, Plaintiff won MTV's inaugural Model Mission on December 05, 1998, a televised modeling competition akin to Miss America, and was awarded a modeling contract with IMG.

30. Shortly thereafter, Plaintiff's career took off.

31. Plaintiff modeled for a Tommy Hilfinger jeans campaign.

*32.* Plaintiff was also featured in Macy's catalogs, Elle, Cosmopolitan and Mademoiselle magazines.

33. Plaintiff also made appearances in television and film program such as MTV's Total Request Live ("TRL"), Fashionably Loud, True Life, and a movie with Joan Rivers.

34. Furthermore, Plaintiff had international modeling gigs in Germany and Australia.

**A Fashion Designer Invites Plaintiff To Men's Fashion Week to Meet Combs**

35. In 2003, when Plaintiff was twenty-two years old, a fashion designer ("the Designer") invited Plaintiff to attend a Men's Fashion Week event held at Cipriani Downtown,

located at 376 W. Broadway, New York, NY 10012.

36. At the time, Plaintiff was engaged in modeling gigs in Miami, Florida and flew to New York for the event.

37. The Designer told Plaintiff that he would be introducing her to Combs which could advance her modeling career.

38. The Designer began to direct Plaintiff's appearance, as he sought to ensure Combs found her attractive.

39. For instance, the Designer instructed Plaintiff to go to Elizabeth Arden to get a root touch up to ensure it was platinum blonde.

40. The Designer also scheduled a stylist to put in hair extensions for Plaintiff.

41. The Designer then handpicked a black leather coat with a fur hood, a translucent chiffon beige v-cut shirt, fur-lined handbag, and jewel encrusted jeans for Plaintiff to wear to the event.

42. Due to the traumatic events to occur later, Plaintiff saved the unwashed clothing from that night in her closet where they remain in a plastic wrap.

**Combs Makes Promises of Career Advancement**

43. Soon thereafter, Plaintiff took a car to Cipriani Downtown, where the Designer was dining with Combs and other guests.

44. Plaintiff felt little control over the events as she was directed what to do and put on display, for the others in attendance.

45. For instance, Plaintiff sat down at an empty seat next to the Designer, but he insisted that she sit down directly across from Combs instead.

46. Once seated, Combs made a very public display of coming on to Plaintiff in a sexually

suggestive manner which continued throughout the dinner.

47. For others to hear, Combs bestowed compliments on Plaintiff by stating for example that she was beautiful and that her eyes were gorgeous.

48. Later, and at a more intimate volume, Combs told Plaintiff "was going to make it big one day" as a model.

49. Combs went on to tell Plaintiff that he had power in the industry and was going to help her advance her career.

50. Combs provided Plaintiff with his phone number as a gesture of good faith in his promises to help her.

51. Throughout their interactions, Combs was flirtatious, bordering on leering, as he leaned across the table towards her.

52. Combs also plied Plaintiff with alcohol throughout the dinner as he repeatedly refilled her glass with wine.

53. After the meal ended, Combs told Plaintiff that he wanted to get to know her better.

54. Combs asked Plaintiff to call him a bit later.

55. Plaintiff felt confused but hopeful that Combs would fulfill his promises to help her career.

**Plaintiff Meets Combs At His Studio Where He Drugs and Sexually Assaults Her**

56. Later that night, Combs requested Plaintiff come see his studio located at 321 W. 44th Street, New York, NY 10036.

57. Plaintiff felt reassured that she would be with others at the studio rather alone in a personal residence.

58. When Plaintiff arrived, she found that Combs and several other men seated together.

59. She found that they were passing around a bottle of Hennesy and joints.

60. After Plaintiff sat down, one of Combs' associates asked her: "Do you smoke weed?", to which she responded affirmatively.

61. Combs' associate replied: "You've never had weed like this before."

62. Plaintiff later came to understand that Combs had laced the joint with a narcotic or other intoxicating substance.

63. Combs passed her the joint and Plaintiff took a hit which felt very powerful.

64. Although Plaintiff insisted that she had enough after that, Combs pressured her to imbibe more alcohol and marijuana by telling her that she was acting too uptight.

65. Plaintiff felt as if she was floating.

66. Seeing Plaintiff was very intoxicated, Combs demanded Plaintiff follow him and he physically led Plaintiff to the bathroom.

67. In the bathroom, Combs forced himself on Plaintiff and began kissing her without her consent.

68. Combs, then, shoved her head down to his crotch before commanding her to "suck it."

69. Plaintiff refused, but Combs pushed her head down onto his phallus and forced her to perform oral sex on him.

70. As she was being assaulted, Plaintiff felt panicked and physically sick.

71. Afterwards, Combs led Plaintiff back into the studio.

72. Upon standing and walking, Plaintiff felt more and more woozy and then lost consciousness.

73. Plaintiff awakened in shock to find herself in a taxicab heading back to the Designer's apartment.

74. As her consciousness returned, Plaintiff realized that she had been sexually assaulted by Combs.

75. Plaintiff felt humiliated and traumatized and without recourse.

**Combs' Asssault Has Caused Plaintiff Lifelong Harm**

76. Following the assault, Plaintiff's modeling opportunities quickly began to dwindle and then evaporated entirely.

77. Upon information and belief, Combs had Plaintiff "blackballed" in the industry and utilized his significant influence to impede Plaintiff's career growth.

78. Plaintiff became severely depressed as she began to blame herself for the assault and for sabotaging her own career.

79. The assault led Plaintiff into a tailspin of anxiety and depression.

80. In or about 2004, Plaintiff attempted suicide and was hospitalized.

81. Everywhere Plaintiff looked she was reminded of Combs' assault, as Combs was an inescapable presence in music, television, and film.

82. In the ensuing years, Plaintiff has also experienced alcohol and drug addiction, as she attempted to cope with the emotional trauma of being assaulted.

83. Plaintiff has also experienced intimacy issues, as she struggles to maintain emotional and sexual relationships with men.

84. Plaintiff was married from approximately 2006 to 2010, however, her marriage fell apart as she had a mental breakdown precipitated by memories of the assault.

85. Combs' assault has altered the trajectory of Plaintiff's career, denying her a successful and lucrative career in the modeling and film industries.

86. To this day, Plaintiff experiences bouts of depression, anxiety, body image issues,

feelings of worthlessness, and intimacy issues because of Combs' assault.

87. Plaintiff is a woman of faith and when she saw news coverage of the lawsuits from Ms. Cassie Ventura, Ms. Dickerson-Neal, and others, she knew she had a moral obligation to speak up.

88. Plaintiff prayed to G-d before bringing this lawsuit, as she feared further violence and/or retaliation from Defendant Combs, but ultimately decided that she needed to speak her truth.

89. Plaintiff seeks justice for herself and for any of other Combs' victims.

## CAUSE OF ACTION

### AS A FIRST CAUSE OF ACTION
### THE NYC VICTIMS OF GENDER-MOTIVATED VIOLENCE PROTECTION ACT
### (Against Defendants)

90. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

91. The NYC Gender Motivated Violence Act revives any claims against "a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender has a cause of action against such party in any court of competent jurisdiction." N.Y.C. Admin. Code § 10-1104.

92. The above-described conduct of Defendant Combs, including sexually assaulting or abusing Plaintiff at a music studio located in Manhattan. constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in N.Y. C. Admin Code § 10-1103.

93. Defendant Combs' crimes of violence were motivated by Plaintiff's gender as defined in in the New York City Administrative Code § 8-903, as Defendant committed forcible sex acts upon Plaintiff that would constitute felonies under state law and as the conduct

10

presents a serious risk of physical injury, whether or not those acts have resulted in criminal charges, prosecution, or conviction.

94. The Appellate Division has held that sexual assault is an act of gender-motivated violence under the law as "Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent." *Breest v. Haggis,* 180 A.D.3d 83, 94 (App. Div. 2019).

95. The above-described conduct of Defendant Combs constitutes sexual offenses as defined in Article 130 of the New York Penal Law.

96. Plaintiff is a woman, who is older than 18, who alleges misdemeanor and/or felony penal law violations, including but not limited to sexual misconduct (N.Y. Penal L. § 130.20), criminal sexual act in the first degree (N.Y. Penal L. § 130.50), criminal sexual act in the third degree ( N.Y. Penal L. § 130.40), forcible touching (N.Y. Penal L. § 130.52), sexual abuse in the first degree (N.Y. Penal L. § 130.65), and sexual abuse in the second degree ((N.Y. Penal L. § 130.60).

97. Defendant Combs coerced Plaintiff to engage in sexual contact and/or sexual intercourse, despite the fact that he was rendered incapable of consenting due to intoxication.

98. Defendant Combs gave Plaintiff several drinks throughout the night and a laced blunt, thus, he knew or should have known that Plaintiff was incapable of consenting to sexual contact and/or sexual conduct.

99. Defendant's actions presented a serious risk of physical injury to Plaintiff's person, regardless of whether or not those acts resulted in criminal charges, prosecution or conviction.

100. As a direct and proximate result of the aforementioned crime of violence and gender-

motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling him to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

101. Furthermore, Defendants Bad Boy Records, Sean John Clothing LLC, and Universal Music Group Inc., enabled Defendant Combs' commission of the crimes of violence motivated by gender, and thus, are liable under the NYC Victims of Gender-Motivated Protection Act.

102. Defendants Bad Boy Records, Sean John Clothing LLC and Universal Music Group Inc. enabled or participated in the sexual abuse of Plaintiff because Defendants failed to, among other things, protect Plaintiff from a known danger; have sufficient policies and procedures in place to prevent sexual assault; properly implement policies and procedures to prevent sexual assault; take reasonable measures to ensure that policies to prevent sexual assault were working; train their employees on identifying sexual assault and inappropriate workplace behaviors; protect their employees from sexual assault; and adhere to the applicable standard of care.

103. Defendants Bad Boy Records, Sean John Clothing LLC and Universal Music Group Inc. enabled or participated in the sexual abuse of Plaintiff because Defendants failed to timely and properly educate, train, supervise, and/or monitor their agents or employees regarding policies and procedures that should be followed when sexual abuse of a child is suspected or observed.

104. Prior to Combs sexually assaulting Plaintiff, Bad Boy Records, Sean John Clothing LLC,

and Universal Music Group Inc. knew or should have known that Combs was not fit to be in a position of authority. Defendants, by and through their agents, servants and/or employees, became aware, or should have become aware of Combs' propensity to commit sexual assault and of the risk to Plaintiff's safety. At the very least, Defendants knew or should have known that they did not have sufficient information about whether or not their leaders, managers, and people were safe to be in positions of power.

105. Defendants Bad Boy Records, Bad Boy Records, Sean John Clothing LLC and Universal Music Group Inc., and Universal Music Group Inc. knew or should have known that Combs posed a risk of sexual assault.

106. Defendants Bad Boy Records, Sean John Clothing LLC and Universal Music Group Inc., Universal Music Group Inc. failed to properly survive Combs and protect Plaintiff from a known danger, and thereby enabled Combs' sexual assaults of Plaintiff.

107. Defendants Bad Boy Records, Sean John Clothing LLC and Universal Music Group Inc. failed negligently deemed that Combs was fit to be in a position of authority; and/or that any previous suitability problems Combs had were fixed and cured; and/or that Combs would not commit acts of sexual assault; and/or that Combs would not injure others.

108. Moreover, Defendants Bad Boy Records, Sean John Clothing LLC and Universal Music Group Inc. enabled the sexual abuse of Plaintiff by actively maintaining and employing Combs in a position of power and authority through which Combs had control over people, including Plaintiff.

109. As a direct and proximate result of the aforementioned crime of violence and gender-motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress,

13

entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

## JURY DEMAND

110. Plaintiff demands a trial by jury of all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendant Combs engaged in unlawful practices prohibited by the New York City Victims of Gender-Motivated Violence Protection Act, in that Combs drugged and sexually assaulted Plaintiff;

B. Declaring that Defendants Bad Boy Records, Sean John Clothing LLC, and Universal Music Group Inc. engaged in unlawful practices prohibited by the New York City Victims of Gender-Motivated Violence Protection Act, in that they enabled Defendant Combs' commission of the crimes of violence motivated by gender;

C. Awarding Plaintiff compensatory damages for mental, and emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff damages for Defendants' breach of contract;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful practices.

Dated: New York, New York
May 21, 2024

**PHILLIPS & ASSOCIATES,**

                                                  **Attorneys at Law, PLLC**

By: _____
     Michelle A. Caiola, Esq.
     Jonathan Goldhirsch, Esq.
     *Attorneys for Plaintiff*
     45 Broadway, Suite 430
     New York, New York 10006
     T: (212) 248-7431
     F: (212) 901 - 2107
     mcaiola@tpglaws.com
     jgoldhirsch@tpglaws.com