**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CRYSTAL MCKINNEY,

                        Plaintiff,

    -against-

SEAN COMBS a/k/a "P. DIDDY",
BAD BOY LLC d/b/a BAD BOY
RECORDS, BAD BOY
ENTERTAINMENT HOLDINGS, INC.,
SEAN JOHN CLOTHING LLC, and
DADDY'S HOUSE RECORDINGS,
INC.,

                      Defendants.

Case No.: 24-cv-03931

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**COMBS DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**SHER TREMONTE LLP**
Erica A. Wolff
Michael Tremonte
Katie Renzler
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
EWolff@shertremonte.com
MTremonte@shertremonte.com
Krenzler@shertremonte.com

*Attorneys for Defendants Sean Combs,*
*Bad Boy Entertainment LLC,*
*Bad Boy Entertainment Holdings, Inc.,*
*Sean John Clothing LLC, and*
*Daddy's House Recordings, Inc.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES................................................................................................ ii

PRELIMINARY STATEMENT......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

LEGAL STANDARD ........................................................................................................ 4

ARGUMENT ..................................................................................................................... 5

I.  THE VGM CLAIM MUST BE DISMISSED AS TO ALL DEFENDANTS BECAUSE
   STATE LAW PREEMPTS THE VGM'S REVIVAL AMENDMNET ................................. 5

II.  NO VIABLE LEGAL THEORY SUPPORTS A VGM CLAIM AGAINST THE
    CORPORATE DEFENDANTS ............................................................................. 9

   A. McKinney Cannot State a VGM Claim Against the Corporate Defendants Because the
      VGM Did Not Apply to Corporate Entities at the Time of the Alleged Misconduct ............. 9

   B. The AC Fails to Allege that the Corporate Defendants Bear Any Liability...................... 11

CONCLUSION.................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Jenkins*,
  Index No. 115745/03, 2005 WL 6584554 (N.Y. Sup. Ct. Apr. 22, 2005) ................................ 11

*AJ Energy LLC v. Woori Bank*,
  No. 18-cv-3735 (JMF), 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019) ............................... 4, 13

*Albany Area Builders Ass'n v. Town of Guilderland*,
  74 N.Y.2d 372 (N.Y. 1989) ...................................................................................................... 6

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
  122 F.3d 130 (2d Cir. 1997) ............................................................................................... 15, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 4

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ................................................................................................ 14

*Bell Atl. Corp. v. Twombly*,
  500 U.S. 544 (2007) ............................................................................................................ 4, 12

*Bellino v. Tallarico*,
  No. 24-cv-0712 (LAK), 2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024) .................................... 8

*Bensky v. Indyke*,
  Nos. 24-cv-1204 (AS), 24-cv-2192 (AS), 2024 WL 3676819 (S.D.N.Y. Aug. 5, 2024) .... 10, 11

*Beter v. Baughman*,
  24-CV-0079 (GHW) (RFT), 2024 WL 1333570 (S.D.N.Y. Mar. 13, 2024) ........................... 13

*C.Q. v. Est. of Rockefeller*,
  No. 20-cv-22205, 2021 WL 4942802 (S.D.N.Y. Oct. 21, 2021) ............................................ 14

*Capak v. St. Execs Mgmt.*,
  No. 20-cv-11079 (RA), 2021 WL 2666007 (S.D.N.Y. June 29, 2011) .................................... 12

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ..................................................................................................... 4

*DJL Rest. Corp. v. City of New York*,
  96 N.Y.2d 91 (N.Y. 2001) ......................................................................................................... 6

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014) ............................................................... 12, 15

*Doe v. Black*,
    23-CV-6418 (JGLC), 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) ........................................ 8

*Doe v. N.Y.C. Dep't of Educ.*,
    669 F. Supp. 3d 160 (E.D.N.Y. 2023) ................................................................ 7

*Doe v. New York City Dep't of Educ.*,
    No. 21-cv-4332, 2023 WL 2574741 (E.D.N.Y. Mar. 20, 2023).................................... 15

*Doe v. Solebury Sch.*,
    No. 21-cv-06792 (LLS), 2022 WL 1488173 (S.D.N.Y. May 11, 2022) ................................... 15

*Doe v. State Univ. of New York Purchase College*,
    617 F. Supp. 3d 195 (S.D.N.Y. 2022) ................................................................ 5

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
    228 F.R.D. 508 (S.D.N.Y. 2005)....................................................................... 16

*Forest Park Pictures v. Universal Television Network, Inc.*,
    683 F.3d 424 (2d Cir. 2012) .......................................................................... 4

*Gleason v. Gleason*,
    26 N.Y.2d 28 (N.Y. 1970) ............................................................................ 10

*Global Network Comc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006) .......................................................................... 8

*Gottwald v. Sebert*,
    40 N.Y.3d 240 (N.Y. 2023) ....................................................................... 10, 11

*Jancyn Mfg. Corp. v. Suffolk Co.*,
    71 N.Y.2d 91 (N.Y. 1987) ............................................................................. 6

*K.W. v. Cnty. of Rockland*,
    Index No. 035570/2023, 2024 WL 186970 (Sup. Ct. Apr. 3, 2024)........................................ 6

*Landgraf v. USI Film Prod.*,
    511 U.S. 244 (1994).................................................................................. 10

*Louis v. Niederhoffer*,
    No. 23-cv-6470 (LTS), 2023 WL 8777015 (S.D.N.Y. Dec. 19, 2023) ............................. 10, 11

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.*,
  90 N.Y.3d 240 (N.Y. 1998) ................................................................................ 10

*Mohamad v. Palestinian Auth.*,
  566 U.S. 449 (2012) ............................................................................................ 9

*N.X. v. Cabrini Med. Ctr.*,
  97 N.Y.2d 247 (N.Y. 2002) ............................................................................... 15

*Oawlawolwaol v. Boy Scouts of Am.*,
  No. 21-cv-4714 (PKC) (JMW), 2021 WL 4355880 (E.D.N.Y Sept. 24, 2021) ........................ 6

*Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*,
  35 N.Y.3d 332 (N.Y. 2020) ........................................................................... 8, 10

*S.A. v. Bell*,
  Index No. 950279/2021, 2023 WL 8653131 (Sup. Ct. N.Y. Cnty. Dec. 14, 2023) .................. 7

*Shi Ming Chen v. Hunan Manor Enter., Inc.*,
  No. 17 CIV. 802 (GBD), 2018 WL 1166626 (S.D.N.Y. Feb. 15, 2018) ............................ 14

*Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*,
  No. 10-cv-4754 (JGK), 2011 WL 4056306 (S.D.N.Y. Sept. 13, 2011) ........................... 16

*Swarna v. Al-Awadi*,
  622 F.3d 123 (2d Cir. 2010) ........................................................................... 15

*Terrance v. City of Geneva, N.Y.*,
  799 F. Supp. 2d 250 (W.D.N.Y. 2011) .................................................................. 5

## Rules

CPLR § 214-g ................................................................................................ 6, 7

CPLR § 214-j ................................................................................................ 2, 7

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 1, 5

**Other Authorities**

N.Y.C. Admin. Code § 10-1104 ........................................................................ 2, 4, 10, 12

N.Y.C. Admin. Code § 10-1105(a) ........................................................................ 5, 7

This memorandum of law is respectfully submitted on behalf of Defendants Sean Combs ("Mr. Combs"), Bad Boy Entertainment LLC, Bad Boy Entertainment Holdings, Inc., Sean John Clothing LLC ("Sean John Clothing"), and Daddy's House Recordings, Inc. ("Daddy's House") (collectively, the "Combs Defendants") in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an ordering dismissing with prejudice the Amended Complaint (ECF 19).

## PRELIMINARY STATEMENT

This action arises out of a single encounter that purportedly occurred over twenty-one years ago. Plaintiff Crystal McKinney ("Plaintiff" or "McKinney") alleges that she met Defendant Sean Combs at a fashion week dinner event in New York City in February 2003, and that she attended the event hoping Mr. Combs would find her "attractive" and "advance her modeling career." AC ¶¶ 43, 33. After Mr. Combs allegedly engaged with her "in a sexually suggestive manner . . . throughout the dinner," that "border[ed] on leering," McKinney allegedly called Mr. Combs later in the evening and accepted an invitation to visit with him at a recording studio. *Id.* ¶¶ 51, 56. McKinney, who says she had been drinking heavily and also smoking marijuana throughout the night, alleges that Mr. Combs sexually assaulted her in the bathroom of the recording studio. Although she claims to have attended the event at the invitation of an unnamed fashion designer, McKinney does not allege that she reported the claimed assault to this person or anyone else at or near the time of the events in question. This complaint followed some two decades later.

Even accepting every implausible allegation in the Amended Complaint ("AC") as true, McKinney fails to state a claim for which relief can be granted. First, her complaint, premised on conduct alleged to have occurred over twenty years ago and based on a single cause of action under New York City's Victims of Gender-Motivated Violence Protection Law ("VGM"), is

1

absolutely time-barred.  The VGM has a seven-year statute of limitations.  Accordingly, her claim expired in 2010, more than fourteen years before she filed it.  Contrary to Plaintiff's contention, her expired claim cannot be revived by a 2022 amendment to the New York City Code that purportedly created a two-year lookback window, because that revival provision is preempted by the New York State Adult Survivor's Act of 2022 ("ASA"), which created a comprehensive statutory scheme for the revival of sexual assault claims and occupies that field.  *See* CPLR § 214-j.  The City law upon which McKinney bases her entire case conflicts with a state law that preempts it.

Second, even if Plaintiff's VGM claim were timely (and it is not) it still could not be sustained as to Defendants Bad Boy Entertainment LLC, Bad Boy Entertainment Holdings, Inc., Sean John Clothing, or Daddy's House (the "Corporate Defendants") because Plaintiff fails to allege *any* conduct by any of these entities that gives rise to inference it "commit[ted], direct[ed], enable[d], participate[d] in, or otherwise conspire[d] in the commission of a crime of violence motivated by gender" as required by the VGM.  *See* N.Y.C. Admin. Code § 10-1104.  To the extent the Amended Complaint references these entities at all, it does so through conclusory allegations of knowledge, boilerplate recitations of the elements of the claim devoid of factual support, and impermissible group pleadings that fail to distinguish the alleged conduct or role of each particular company.  Moreover, the Corporate Defendants cannot be held liable for the misconduct alleged in this action because it is well-settled that sexual assault by an employee is outside the scope of employment and thus cannot be imputed to an employer, and because Plaintiff does not come close to alleging reverse veil-piercing that would permit any entity to be held liable for the alleged conduct of its owner.

For the reasons that follow, McKinney does not, and cannot, state a cause of action against the Defendants and the Amended Complaint should be dismissed with prejudice.

## **FACTUAL BACKGROUND**

This action arises out of a single alleged encounter Plaintiff claims she had with Mr. Combs over twenty-one years ago.  The Amended Complaint alleges the circumstances of their encounter as follows:

In or around February 2003, Plaintiff, at the time a twenty-two year old model, was invited by an unnamed "Designer" to attend an event at Cipriani Downtown in New York City for the Defendant clothing brand Sean John Clothing.  AC ¶ 40.  She accepted the invitation, having been told that she would have the opportunity to meet Mr. Combs at the event, "which could advance her modeling career."  *Id.* ¶ 42.

Before the event, Plaintiff, at the advice of the Designer, made various efforts "to ensure Combs found her attractive."  *Id.* ¶ 43.  She dyed her hair; applied hair extensions; and donned herself in a black leather and fur coat, a translucent shirt, and jewel encrusted jeans.  *Id.* ¶¶ 44–46.

McKinney alleges that, at the event, she spoke with Mr. Combs about her modeling career, he flirted with her, and she drank multiple glasses of wine.  *Id.* ¶¶ 53–57.  Plaintiff alleges that throughout the event, Mr. Combs behaved towards her in a "sexually suggestive manner" that was "bordering on leering."  *Id.* ¶¶ 51, 56.  Towards the end of the event, Mr. Combs allegedly gave Plaintiff his phone number and invited her to call him later that night, which she apparently did.  *Id.* ¶¶ 55, 59–61.

When they reconnected later that evening as they had discussed, Mr. Combs allegedly invited Plaintiff to his recording studio, Daddy's House, where albums "produced and released by Bad Boy Records" were recorded.  *Id.* ¶¶ 61–62.  Plaintiff accepted the invitation.  *Id.* ¶ 64.

She alleges that when she arrived at Daddy's House Mr. Combs and "Bad Boy Records employees and/or other industry professionals" were working on an album. *Id.* ¶¶ 64–65. While at Daddy's House, Plaintiff drank more alcohol and smoked marijuana—despite a warning from "one of Combs' associates" that, "[she'd] never had weed like this before." *Id.* ¶¶ 67–68. She alleges that the weed was "laced" with a "narcotic or other intoxicating substance." *Id.* ¶¶ 69, 74–75. McKinney alleges that Defendant later led her to a bathroom at the studio where he "began kissing her without her consent" and "forced her to perform oral sex on him." *Id.* ¶¶ 77–79.

Based on the foregoing allegations, Plaintiff asserts a single cause of action for violation the New York City Victims of Gender-Motivated Violence Protection Act, N.Y.C. Admin. Code § 10-1104.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 570 (2007)). "A claim has 'facial plausibility' when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012) (citation omitted). It is not enough to assert mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. While a court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), a court "is not required to credit conclusory allegations unsupported by facts, . . . or to suspend common sense in conducting its analysis." *AJ Energy LLC v. Woori Bank*, No. 18-cv-

4

3735 (JMF), 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019), *aff'd,* 829 F. App'x 533 (2d Cir. 2020).

## ARGUMENT

**I.    THE VGM CLAIM MUST BE DISMISSED AS TO ALL DEFENDANTS BECAUSE STATE LAW PREEMPTS THE VGM'S REVIVAL AMENDMNET**

McKinney's sole cause of action—a claim under the VGM—is both time-barred and preempted.

As relevant here, the VGM carries a seven-year statute of limitations.  N.Y.C. Admin. Code § 10-1105(a).  McKinney's VGM claim rests on conduct that allegedly occurred more than two decades ago, in 2003.  *See* AC ¶ 40 (pleading that the alleged events occurred "[o]n or about February 2003").  As such, the statute of limitations on McKinney's VGM claim expired in 2010. Because she did not bring her claim until 2024, her claim is time-barred.  N.Y.C. Admin. Code § 10-1105(a); *see also Doe v. State Univ. of New York Purchase College*, 617 F. Supp. 3d 195, 205, 210 (S.D.N.Y. 2022) (explaining motion to dismiss based on statute of limitations is properly brought pursuant to Rule 12(b)(6) and dismissing action as time-barred).

Recognizing that her claim falls well outside the VGM's seven-year statute of limitations, McKinney argues that her action can nonetheless be pursued under a recent amendment to the VGM – N.Y.C Admin. Code § 10-1105(a) – which purports to create a two-year revival window. AC ¶ 10.

But this amendment to the New York City Administrative Code does not save McKinney's expired VGM claim because a comprehensive state-wide statutory scheme preempts the amendment.  "The preemption doctrine represents a fundamental limitation on a municipality's 'home rule' powers.  Local police power may not be exercised in an area in which it is preempted by State law." *Terrance v. City of Geneva, N.Y.*, 799 F. Supp. 2d 250, 254

(W.D.N.Y. 2011) (citing *Jancyn Mfg. Corp. v. Suffolk Co.*, 71 N.Y.2d 91, 96 (N.Y. 1987)).  In New York, state law may preempt local law expressly or implicitly.  *DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 95 (N.Y. 2001).  Implicit preemption occurs when the state legislature has "enacted a comprehensive and detailed regulatory scheme in a particular area" such that the local government is "precluded from legislating on the same subject matter unless it has received 'clear and explicit' authority to the contrary."  *Id.*  The State's intent to occupy a field may also be implied "from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area."  *Albany Area Builders Ass'n v. Town of Guilderland*, 74 N.Y.2d 372, 377 (N.Y. 1989).  "Where the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute." *Id.*

Through its enactment of the Child Victims Act of 2019 (the "CVA") and the ASA in 2022, the New York State Legislature impliedly occupied the entire field of claim revival for sexual offense-related claims by establishing a comprehensive and detailed regulatory scheme. Together, the two statutes cover revival of *all claims and causes of action* for misconduct tied to a sexual offense under the New York Penal Code §§ 130 *et seq.  See* CPLR §§ 214-g, 214-j. Both statutory revival windows have closed—on August 14, 2021, and November 24, 2023, for the CVA and ASA respectively.  *Oawlawolwaol v. Boy Scouts of Am.*, No. 21-cv-4714 (PKC) (JMW), 2021 WL 4355880, at *1 n.1 (E.D.N.Y Sept. 24, 2021); *K.W. v. Cnty. of Rockland*, Index No. 035570/2023, 2024 WL 186970, at *1 (Sup. Ct. Apr. 3, 2024).

That the CVA and the ASA occupy the entire field of claim revival for sexual offense-related claims is reflected by numerous cases in which plaintiffs used those statutes to revive a

broad range of time-barred claims, *including those brought pursuant to local laws like VGM* and the New York City Human Rights Law ("NYCHRL").  *See, e.g.*, *S.A. v. Bell*, Index No. 950279/2021, 2023 WL 8653131, at *1 (Sup. Ct. N.Y. Cnty. Dec. 14, 2023) (discussing VGM claim brought under CVA); *Doe v. N.Y.C. Dep't of Educ.*, 669 F. Supp. 3d 160, 168 (E.D.N.Y. 2023) (holding CVA revived NYCHRL claims).[1]  The ASA applies "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary."  CPLR § 214-j; *see id.* § 214-g (CVA provides the same).  Put differently, the ASA's and CVA's revival windows govern the statutes of limitations for claims that fall within their ambit.  There is no question that Plaintiff's VGM claim falls within the ambit of the ASA.  *Compare* ASA, CPLR § 214-j (applying to any conduct which would constitute a sexual offense), *with* AC ¶ 120 (alleging violation of the VGM premised on Defendant allegedly "sexually assaulting" her).

Thus, on its face, the VGM's revival amendment conflicts with the ASA and the CVA's statutory scheme.  The amendment creates a two-year revival period lasting from March 1, 2023, through March 1, 2025 for VGM claims.  N.Y.C. Admin. Code § 10-1105(a).  In other words, the amendment creates a new revival window for claims rooted in sexual misconduct that is contrary to the deadlines set by the CVA and ASA.  By extending the revival period for certain claims relating to sexual misconduct, the amendment's expansion stands in direct conflict with the ASA's and CVA's mandates that their revival periods control "[n]otwithstanding *any* provision of law which imposes a period of limitation to the contrary."  CPLR §§ 214-g, 214-j (emphasis added).  Applying this logic, in *Bellino v. Tallarico*, U.S. District Judge Lewis A. Kaplan

---

[1]    Thus, had McKinney brought her VGM claim within the ASA's revival window it may have been revived, but because she brought it after the ASA's revival window closed, it is unquestionably time-barred.

resolved in the defendant's favor the very same question presented here, holding that the plaintiff could not use the VGM amendment to revive an expired VGM claim because that amendment "is preempted by the state's adoption of the [CVA] and the [ASA]."  No. 24-cv-0712 (LAK), 2024 WL 1344075, at *1 (S.D.N.Y. Feb. 21, 2024).[2]

Furthermore, to the extent there is any doubt that the ASA and/or CVA preempts VGM's revival window, that doubt must be resolved in favor of preemption because "[r]evival is an extreme exercise of legislative power" and "[u]ncertainties are resolved against consequences so drastic."  *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 371 (N.Y. 2020).  To balance this extreme exercise of legislative power and its "upsetting [of] the strong public policy favoring finality, predictability, fairness and repose served by statutes of limitations," the New York State Legislature provides only "a limited window when stale claims may be pursued."  *Id.* at 371–72.  Here, the New York State Legislature made the deliberate choice to revive stale claims arising from sexual misconduct for only limited periods of time pursuant to the CVA and ASA.  A local law cannot be permitted to upset that policy determination by creating an enlarged revival window for a subset of claims covered by ASA's and CVA's revival windows.[3]  For these reasons, the VGM claim must be dismissed in its entirety.

---

[2]    The Combs Defendants acknowledge that Judge Clarke recently rendered a decision that disagrees with Judge Kaplan's holding as to the CVA.  *See Doe v. Black*, 23-CV-6418 (JGLC), 2024 WL 4335453, at *3–7 (S.D.N.Y. Sept. 27, 2024) (holding that the CVA does not preempt the VGM revival amendment).  For the reasons set forth herein, Judge Kaplan's conclusion that the ASA preempts the VGM is consistent with settled law.

[3]    Indeed, public filings, of which the Court may take judicial notice, *Global Network Comc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006), reflect that even the plaintiffs' bar understood that the revival provision in New York City's VGM would not operate to revive sexual assault claims outside the State's revival windows for such claims:

**II.    NO VIABLE LEGAL THEORY SUPPORTS A VGM CLAIM AGAINST THE CORPORATE DEFENDANTS**

    **A.    McKinney Cannot State a VGM Claim Against the Corporate Defendants Because the VGM Did Not Apply to Corporate Entities at the Time of the Alleged Misconduct**

Even if the VGM claim were not wholly time-barred and preempted as to all Combs Defendants, it would, at a minimum, have to be dismissed as to the Corporate Defendants because the VGM did not apply to corporate entities at the relevant time and the recent VGM amendment extending liability to entity defendants does not apply retroactively.

As originally enacted in 2000, the VGM provided a cause of action against only the *individual* who perpetrated a gender-motivated crime of violence.  *See* Wolff Aff. Ex. B (providing that "any person claiming to be injured *by an individual* who commits a crime of violence motivated by gender . . . has a cause of action *against such individual*" (emphasis added)).  The Corporate Defendants could not be held liable for any conduct under the original VGM because they are not "individual[s]."  *See, e.g.*, *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454–57 (2012) (explaining that the ordinary meaning of "individual" refers to "a natural person" as opposed to "a corporation").

---

Notwithstanding the passage of the VGM's lookback window in 2022, in New York City (where the VGM lookback was available), the number of ASA cases filed in the last month of the ASA window was *more than twenty times* the monthly average in the preceding months.  *See* Affidavit of Samantha Luevanos, dated November 8, 2024 ("Luevanos Affidavit") at ¶¶ 6–7, 9–10 and Exhibit B thereto.  In all other counties in New York State (where the VGM lookback was *not* available), the number of ASA cases filed in the last month of the ASA window was approximately nineteen times the monthly average in the preceding months.  *Id.* at ¶¶ 4–5, 8, 11–12 and Exhibit A thereto.

    If the New York City plaintiffs' bar actually believed the VGM's revival provision could revive otherwise time-barred sexual assault claims, such as expired VGM claims, they would not have rushed to file their claims within the state law revival window, let alone have done so at an even faster rate than claims filed elsewhere in New York State (where no VGM revival even arguably applied).

The City Council's 2022 amendment to the statute expanded liability beyond individuals and their direct conduct.  As amended, the law creates a cause of action for "any person claiming to be injured by *a party* who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender . . . ."  N.Y.C. Admin. Code § 10-1104 (emphasis added); *see also* Wolff Aff. Ex. C.  But, as United States District Court Judge Subramanian has squarely held, the 2022 Amendment is not retroactive.  *See Bensky v. Indyke*, Nos. 24-cv-1204 (AS), 24-cv-2192 (AS), 2024 WL 3676819, at *9–10 (S.D.N.Y. Aug. 5, 2024) (holding that 2022 amendment expanding VGM liability beyond individual perpetrator does not apply retroactively and dismissing VGM claim accordingly).

The recent holding in *Bensky* is consistent with settled law. There exists a strong presumption against retroactivity.[4]  *Gottwald v. Sebert*, 40 N.Y.3d 240, 258 (N.Y. 2023).  This presumption is "based on '[e]lementary considerations of fairness [that] dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly.'" *Regina Metro. Co.*, 35 N.Y.3d at 370 (alterations in original) (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265 (1994)).  Accordingly, "[i]t takes a clear expression of the legislative purpose . . . to justify a retroactive application" of a statute.  *Gleason v. Gleason*, 26 N.Y.2d 28, 36 (N.Y. 1970) (citation and internal quotation marks omitted).  The New York Court of Appeals has held that "statutes will not be given such construction unless the language expressly or by necessary implication requires it."  *Gottwald*, 40 N.Y.3d at 258 (quoting *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 90 N.Y.3d 240, 258 (N.Y. 1998)).

---

[4]    The retroactivity analysis is conducted pursuant to state law.  *See Louis v. Niederhoffer*, No. 23-cv-6470 (LTS), 2023 WL 8777015, at *1 (S.D.N.Y. Dec. 19, 2023) (applying New York State law to hold that the VGM is not retroactive).

Nothing in the VGM, or its revival amendment, indicates "expressly or by necessary implication" that it should be applied retroactively. The statute includes neither express language nor any "necessary implication" that retroactivity is appropriate. Thus, not surprisingly, every court that has considered the question of whether the VGM applies retroactively has come to the same conclusion: it does not. *See Louis*, 2023 WL 8777015, at *1 (dismissing VGM claim as to incidents that pre-dated the VGM's enactment); *Adams v. Jenkins*, Index No. 115745/03, 2005 WL 6584554, at *1 (N.Y. Sup. Ct. Apr. 22, 2005) (same). The VGM's recent amendment purporting to create a revival window does not alter that determination. *See Louis*, 2023 WL 8777015, at *1; *see also Gottwald*, 40 N.Y.3d at 258 ("[S]tatutes will not be given [retroactive] construction unless the language expressly or by necessary implication requires it."). For that reason, the court in *Bensky* held that the VGM's 2022 amendment does *not* apply retroactively and therefore could not be used to impose liability on a defendant alleged to have "direct[ed], enable[d], participate[d] in, or conspire[d]" in the commission of a gender motivated crime. *Bensky*, 2024 WL 3676819, at *9–10. This Court should reach the same conclusion. Because all of the alleged underlying conduct transpired long before the 2022 amendment, and because nothing in the 2022 amendment or elsewhere evinces any legislative intent to render it retroactive, McKinney's VGM claim against the Corporate Defendants must be dismissed.

### B.    The AC Fails to Allege that the Corporate Defendants Bear Any Liability

Even if the 2022 VGM amendment extending liability beyond alleged perpetrators could apply retroactively (it cannot), the VGM claim would fail as to the Corporate Defendants because McKinney does not allege that any of the Corporate Defendants did anything to bring about the alleged assault. In order to state a claim for violation of the VGM against any defendant, a plaintiff must allege conduct by each defendant that gives rise to a plausible inference that each defendant "commit[ted], direct[ed], enable[d], participate[d] in, or otherwise

conspire[d] in the commission of a crime of violence motivated by gender."  N.Y.C. Admin. Code § 10-1104.

First, McKinney's allegation that the Corporate Defendants "enabled" the alleged misconduct because they "knew or should have known that Combs posed a risk of sexual assault" but "failed to protect Plaintiff from a known danger" (AC ¶¶ 129–30) is not supported by a single factual allegation in the Amended Complaint.  McKinney does not allege any fact giving rise to the plausible inference that at the time of the alleged misconduct in February 2003, any of the Corporate Defendants had knowledge of any purported propensities for misconduct. Instead, she relies on a Rolling Stone article published in May 2024, allegations in pending litigations commenced in 2023 and 2024, and unsupported conclusions that people in the "industry" knew about Mr. Combs' alleged "propensity for violence" and sexual misconduct. AC ¶¶ 103–13.  A news article published and allegations in unsubstantiated lawsuits filed more than two decades after the alleged incident do nothing to shore up an allegation that in 2003 any of the Corporate Defendants (let alone *each* of them) had any awareness of any purported propensity of misconduct.  These allegations are nothing more than the sort of "formulaic recitation[s] of the elements" of the cause of action that courts routinely reject as insufficient. *See, e.g., Bell Atl. Corp.,* 550 U.S. at 555; *Doe v. Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y. 2014) (granting motion to dismiss negligent supervision and retention claim where the pleadings lacked any factual allegations that the defendant "knew or should have known" of the tortfeasor's alleged "predisposition for abusing women, his violent propensities, and his status as a sexual predator, yet did nothing to stop it"); *Capak v. St. Execs Mgmt.*, No. 20-cv-11079 (RA), 2021 WL 2666007, at *4 (S.D.N.Y. June 29, 2011) (dismissing negligent hiring and retention claim

because "complaint is devoid of any facts tending to show that, at the time [the tortfeasor] was hired, he had a propensity for violence that was known to [defendants]").

The AC fails to allege *any* conduct actually undertaken by any of the Corporate Defendants that could render any (let alone *each*) of them liable for any injury allegedly suffered by McKinney. Aside from generic and wholly supported allegations of knowledge, the only allegations involving the Corporate Defendants are the following: (1) Plaintiff first met Mr. Combs at a dinner event hosted by Sean John Clothing; (2) the alleged assault occurred in a bathroom at the recording studio for Daddy's House, where a "Bad Boy Records" album was being recorded; (3) individuals who *may* have been employed by "Bad Boy Records" were *present* at the studio (but not in the bathroom where the alleged assault purportedly occurred); and (4) Mr. Combs founded and/or owned the Corporate Defendants and had a "position of power and authority" over them. AC ¶¶ 26, 29, 31, 32, 40, 48, 61, 62, 65, 77–81, 132.[5] None of these allegations give rise to a plausible inference that any of the Corporate Defendants "commit[ted], direct[ed], enable[d], participate[d] in, or otherwise conspire[d]" to commit a sexual assault. *See, e.g.*, *Beter v. Baughman*, 24-CV-0079 (GHW) (RFT), 2024 WL 1333570, at *11, 13–14 (S.D.N.Y. Mar. 13, 2024) (finding plaintiff failed to state claims for aiding and abetting sexual assault against defendant who allegedly "introduced" plaintiff to the accused assaulter, "did so knowing that" the accused assault "had a history of improperly touching women," and told plaintiff "not to tell anyone about the alleged sexual assault," because

---

[5]     The AC also alleges that Mr. Combs somehow had "control over . . . Plaintiff" by virtue of his roles with the Corporate Defendants. AC ¶ 132. McKinney offers no basis to infer Mr. Combs could have "controlled" her in connection with those entities—for example, she does not allege that she was employed by or otherwise worked with any of the Corporate Defendants. The Court is not required to credit such conclusory and implausible assertions. *See AJ Energy LLC*, 2019 WL 4688629, at *3 (a court "is not required to credit conclusory allegations unsupported by facts, . . . or to suspend common sense in conducting its analysis.").

"[n]othing in the Complaint supports a conclusion that [defendant] knew that his conduct would help [the alleged assaulter] sexually assault Plaintiff or that [defendant] intended to help [the alleged assaulter] sexually assault Plaintiff"); *Cort v. Marshall's Dep't Store*, No. 14-cv-7385, 2015 WL 9582426, at *1, 5 (E.D.N.Y. Dec. 29, 2015) (mere fact that assault occurred on corporate premises insufficient, without more, to hold corporation liable); *C.Q. v. Est. of Rockefeller*, No. 20-cv-22205, 2021 WL 4942802, at *2–4 (S.D.N.Y. Oct. 21, 2021) (employee's misuse of employer's apartment to engage in sexual abuse could not be imputed to employer). Indeed, there is not a single allegation that any other person associated with any of the Corporate Defendants had any knowledge of the alleged assault at all.

Moreover, even if the allegations as to "Bad Boy Records" were sufficient to render an entity liable for committing, directing, enabling, or conspiring to commit a sexual assault (and they plainly are not), those allegations fail on their face as impermissible group pleadings because Plaintiff lumps Bad Boy Entertainment LLC and Bad Boy Entertainment Holdings, Inc. together (*see* AC Introductory Paragraph (defining both entities collectively as "Bad Boy Records")) and makes no effort whatsoever to distinguish the conduct or role that either of these entities purportedly played. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [Plaintiff's] complaint failed to satisfy [Rule 8's pleading] standard" (internal citation omitted)); *Shi Ming Chen v. Hunan Manor Enter., Inc.*, No. 17 CIV. 802 (GBD), 2018 WL 1166626, at *9 (S.D.N.Y. Feb. 15, 2018) ("Plaintiffs' attempt to simply lump all seventeen Defendants together into one allegation—without any accompanying facts to support the inference that Moving Defendants had the power to control Plaintiff—is insufficient to satisfy the *Twombly/Iqbal* pleading standard" (internal citation omitted)).

Plaintiff's allegations of liability as to the Corporate Defendants fail for a second, related reason—the Corporate Defendants cannot be held liable merely by virtue of Mr. Combs' employment with or ownership of any of them. *See* AC ¶¶ 27, 29, 32. An employer may be held responsible for the acts of its employee "only if those acts were committed in furtherance of the employer's business and within the scope of employment." *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251 (N.Y. 2002). Defendant Bad Boy Records was in the business of publishing records. AC ¶ 26. Defendant Daddy's House was in the business of recording music. *Id.* ¶¶ 28–30. Defendant Sean John Clothing was in the retail fashion business. *Id.* ¶¶ 31–32. None of the conduct allegedly giving rise to Plaintiff's injuries could be construed as within the scope of any of these businesses. Indeed, "it is well-settled in the Second Circuit" that "sexual misconduct is necessarily outside the scope of employment." *Doe v. New York City Dep't of Educ.*, No. 21-cv-4332, 2023 WL 2574741, at *5 (E.D.N.Y. Mar. 20, 2023); *see also, e.g.*, *Doe v. Solebury Sch.*, No. 21-cv-06792 (LLS), 2022 WL 1488173, at *3–4 (S.D.N.Y. May 11, 2022) (dismissing sexual assault related vicarious liability claim against employer); *Alsaud*, 12 F. Supp. 3d at 677 (dismissing *respondeat superior* claim against employer and noting that "[n]o decision in New York has been cited to date in which the doctrine of *respondeat superior* was held to apply to sexual assault."). Sexual misconduct "arise[s] from personal motives and do[es] not further an employer's business." *Swarna v. Al-Awadi*, 622 F.3d 123, 144–45 (2d Cir. 2010).

Likewise, while the AC alleges that Mr. Combs owned Daddy's House (AC ¶ 29), that allegation is patently insufficient to hold that entity liable for Defendant's alleged misconduct. A corporate entity may be held liable for its owner's acts only in the most extraordinary circumstances under a "reverse piercing theory." *See, e.g.*, *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). That is appropriate only where (i) a corporation is

"dominated" such that corporate formalities are not observed and (ii) the "domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Id.*; *see also Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*, No. 10-cv-4754 (JGK), 2011 WL 4056306, at *5 (S.D.N.Y. Sept. 13, 2011) ("Disregard of the corporate form is warranted only in 'extraordinary circumstances,' and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss" (quoting *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 511–12 (S.D.N.Y. 2005)). Plaintiff does not come close to pleading allegations sufficient to justify reverse piercing. There are no allegations that corporate formalities were disregarded (conclusory or otherwise), nor are there any allegations that any purported dominance or control was used to perpetrate a fraud or wrong against McKinney.

Accordingly, none of the Corporate Defendants can be held liable pursuant to the VGM for the misconduct that allegedly transpired in 2003.

## **CONCLUSION**

For all the reasons set forth above, the Combs Defendants respectfully request that the

Court dismiss the Complaint in its entirety and grant such other and furth relief as the Court

deems proper and just.

Dated: New York, New York                    SHER TREMONTE LLP
      November 8, 2024

      *Erica A. Wolff*

      Erica A. Wolff
      Michael Tremonte
      Katie Renzler
      SHER TREMONTE LLP
      90 Broad Street, 23rd Floor
      New York, New York 10004
      Tel.: (212) 202-2600
      Fax: (212) 202-4156
      EWolff@shertremonte.com
      MTremonte@shertremonte.com
      KRenzler@shertremonte.com

      *Attorneys for Defendants Sean*
      *Combs, Bad Boy Entertainment LLC,*
      *Bad Boy Entertainment Holdings,*
      *Inc., Sean John Clothing LLC, and*
      *Daddy's House Recordings, Inc.*