**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CRYSTAL MCKINNEY,

Plaintiff,

-against-

SEAN COMBS a/k/a "P. DIDDY", BAD BOY LLC d/b/a BAD BOY RECORDS, BAD BOY ENTERTAINMENT HOLDINGS, INC., SEAN JOHN CLOTHING LLC, and DADDY'S HOUSE RECORDINGS, INC.,

Defendants.

Case No.: 24-cv-03931

**ORAL ARGUMENT REQUESTED**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE COMBS DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**SHER TREMONTE LLP**
Erica A. Wolff
Michael Tremonte
Katie Renzler
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
EWolff@shertremonte.com
MTremonte@shertremonte.com
Krenzler@shertremonte.com

*Attorneys for Defendants Sean Combs, Bad Boy Entertainment LLC, Bad Boy Entertainment Holdings, Inc., Sean John Clothing LLC, and Daddy's House Recordings, Inc.*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 3

I. STATE LAW PREEMPTS THE VGM'S REVIVAL AMENDMENT ..... 3

II. THERE IS NO BASIS ON WHICH TO HOLD THE CORPORATE DEFENDANTS LIABLE FOR THE ALLEGED CONDUCT ..... 6

A. The 2022 VGM Amendment Does Not Apply Retroactively to Pre-2022 Conduct ..... 6

B. The Facts Alleged Do Not State a Claim Against the Corporate Defendants ..... 9

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Jenkins*,
No. 115745/03, 2005 WL 6584554 (N.Y. Sup. Ct. Apr. 22, 2005) ........ 7

*Albany Area Builders Ass'n v. Town of Guilderland*,
74 N.Y.2d 372 (N.Y. 1989) ........ 5

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
122 F.3d 130 (2d Cir. 1997) ........ 10

*Bellino v. Tallarico*,
No. 24-cv-0712 (LAK), 2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024) ........ 2, 4

*Bensky v. Indyke*,
No. 24-cv-1204 (AS), 2024 WL 3676819 (S.D.N.Y. Aug. 5, 2024) ........ 7, 8

*CFCU Cmty. Credit Union v. Hayward*,
552 F.3d 253 (2d Cir. 2009) ........ 8

*Cort v. Marshall's Dep't Store*,
No. 14-cv-7385, 2015 WL 9582426 (E.D.N.Y. Dec. 29, 2015) ........ 10

*Doe v. Black*,
No. 23-CV-6418 (JGLC), 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) ........ 2, 4, 5

*Doe v. Black*,
No. 23-CV-6418 (JGLC) (S.D.N.Y. Nov. 8, 2024), ECF No. 153 ........ 4

*Doe v. Combs*,
23-CV-10628 (JGLC), 2024 WL 4987044 (S.D.N.Y. Dec. 5, 2024) ........ 2, 4, 7, 8

*Doe v. Combs et al.*,
No. 23-CV-10628 (JGLC) (S.D.N.Y. Oct. 1, 2024), ECF No. 66 ........ 6

*Doe v. Gooding*,
No. 20-cv-06569 (PAC), 2022 WL 1104750 (S.D.N.Y. April 13, 2022) ........ 3, 4

*Engelman v. Rofe*,
194 A.D.3d 26 (1st Dep't 2021) ........ 3,4

*Gottwald v. Sebert*,
40 N.Y.3d 240 (N.Y. 2023) ........ 8

*Graves v. Combs*,
No. 24-cv-07201 (S.D.N.Y. Jan. 3, 2025), ECF No. 43 .......... 8

*Heintz v. Jenkins*,
514 U.S. 291 (1995) .......... 6

*JL v. The Rockefeller Univ. Hosp.*,
2023 NY Slip Op 31877 [U] (N.Y. Sup. Ct. June 1, 2023) .......... 7

*Louis v. Niederhoffer*,
No. 23-cv-6470 (LTS), 2023 WL 8777015 (S.D.N.Y. Dec. 19, 2023) .......... 7

*Ormond v. Weinstein*,
2024 N.Y. Misc. LEXIS 22470 (Sup. Ct. N.Y. Cnty. Aug. 19, 2024) .......... 10

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.*,
91 N.Y.2d 577 (N.Y. 1998) .......... 9

*Matter of Chwick v. Mulvey*,
81 A.D.3d 161, 168 (2d Dep't 2010) .......... 6

*Matter of Mia S.*,
179 N.Y.S. 3d 732 (2d Dep't 2022) .......... 8

*N.X. v. Cabrini Med. Ctr.*,
97 N.Y.2d 247 (N.Y. 2002) .......... 10

*People v. Cooper*,
49 Misc. 3d 132(A), 26 N.Y.S.3d 215 (2d Dep't, N.Y. App. Term. 2015) .......... 5

*Police Benevolent Assn. of City of New York, Inc. v City of New York*,
40 N.Y.3d 417 (N.Y. 2023) .......... 3

*S.A. v. Bell*,
No. 950279/2021, 2023 WL 8653131 (Sup. Ct. N.Y. Cnty. Dec. 14, 2023) .......... 5

*Southeastern Comm. Coll. v. Davis*,
442 U.S. 397 (1979) .......... 6

*Stein et al. v. The Rockefeller Univ. Hosp.*,
No. 159929/2023 (N.Y. Sup. Ct. Nov. 16, 2023) .......... 7

**Statutes**

28 U.S.C § 1292 .......... 4

N.Y. Judiciary L. § 219-d .......... 6

N.Y. Judiciary L. § 219-e .......... 6

**Rules**

CPLR § 214 ..... 3

CPLR § 214-g ..... 4, 5

CPLR § 214-j ..... 4, 5

CPLR § 215 ..... 3

**Other Authorities**

N.Y.C. Admin. Code § 10-1104 ..... 8, 9

This reply memorandum of law is respectfully submitted on behalf of the Combs Defendants[1] (the "Defendants") in response to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF No. 36) (the "Opposition or "Opp.") and in further support of the Combs Defendants' Motion to Dismiss the Amended Complaint with Prejudice (ECF Nos. 32-35) (the "Motion to Dismiss").

## PRELIMINARY STATEMENT

On this procedural motion, the Court is not faced with evaluating the truth or falsity of Plaintiff's outrageous allegations. Rather, the Court's present task is to determine, as a matter of law, whether Plaintiff's allegations—which were filed over twenty-one years after the single alleged encounter in question and roughly six months after the filing deadline imposed by state law—plead a viable cause of action as to each Defendant. As set forth below and in the Opening Brief, they do not.

The instant Motion to Dismiss raises two principal issues: (1) Whether corporate entities may be held liable under the VGM for conduct alleged to have occurred when the VGM did not apply to corporate entities; and (2) Whether the VGM – a New York City statute that revived claims for sexual assault – is preempted by the CVA and ASA, a conflicting and comprehensive statutory scheme enacted by New York State.

As to the first question, every court to address this issue has, consistent with well-settled precedent, concluded that a corporate entity cannot be held liable under the VGM for conduct alleged to have occurred before the VGM's 2022 amendment extending its application to corporate entities. Plaintiff's Opposition functionally ignores this precedent.

[1] Unless otherwise stated herein, the abbreviations and defined terms used herein are the same as those in the Memorandum of Law in Support of the Combs Defendants' Motion to Dismiss the Amended Complaint with Prejudice (ECF No. 33) ("Opening Brief" or "Br.").

As to the second question, Defendants are aware of two judges who have addressed the issue of whether the ASA and CVA preempt the VGM. Those two judges (both in this District)—the Honorable Lewis Kaplan and the Honorable Jessica G.L. Clarke—reached different conclusions, with Judge Kaplan holding the ASA and CVA preempt the VGM and Judge Clarke holding the CVA does not preempt the VGM.[2] *Compare Bellino v. Tallarico*, No. 24-cv-0712 (LAK), 2024 WL 1344075, at *1 (S.D.N.Y. Feb. 21, 2024), *appeal withdrawn*, 240763, 2024 WL 3170987 (2d. Cir. Apr. 4, 2024), *with Doe v. Combs*, 23-CV-10628 (JGLC), 2024 WL 4987044, at *2 (S.D.N.Y. Dec. 5, 2024), and *Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 WL 4335453, at *2-7 (S.D.N.Y. Sept. 27, 2024). For the reasons set forth in the Opening Brief and discussed further below, the weight of authority supports Judge Kaplan's conclusion. This Court should similarly dismiss Plaintiff's claim because the New York State ASA and CVA provided a comprehensive statutory scheme governing the revival of sexual assault claims and thus preempt the New York City VGM's conflicting revival window.

The VGM claim against the Corporate Defendants fails for the additional reason that the AC fails to allege facts giving rise to an inference that each of the Corporate Defendants enabled the alleged misconduct. Instead, it rests on impermissible group pleadings and generalized allegations of knowledge that do not state a claim.

Plaintiff's action should, accordingly, be dismissed.

---

[2] Judge Clarke's holdings are limited to the preemptive effect of the CVA only. *See Combs*, 2024 WL 4987044, at *2; *Black*, 2024 WL 4335453, at *2-7.

## ARGUMENT

### I. STATE LAW PREEMPTS THE VGM'S REVIVAL AMENDMENT

The revival window enacted by New York City's VGM is preempted by the comprehensive statutory scheme created by New York State's ASA and CVA which revived sexual assault claims for a limited window that closed before Plaintiff filed this lawsuit.

Misleadingly, Plaintiff asserts there is binding precedent foreclosing preemption here. *See* Opp. 9. This assertion is absolutely false. First, contrary to Plaintiff's contention, neither *Engelman v. Rofe*, 194 A.D.3d 26 (1st Dep't 2021), holding modified by *Police Benevolent Assn. of City of New York, Inc. v City of New York*, 40 N.Y.3d 417 (N.Y. 2023), nor *Doe v. Gooding*, No. 20-cv-06569 (PAC), 2022 WL 1104750 (S.D.N.Y. April 13, 2022), resolves the question of whether the ASA and CVA preempt the VGM's revival amendment. *See* Opp. 9-10. Indeed, it would have been impossible for *Engelman* to decide whether the ASA or CVA preempts the VGM revival provision because *Engelman* was decided in 2021—one year *before* the VGM revival provision was enacted. Rather, *Engelman* decided a different issue: whether the VGM's seven-year statute of limitations was preempted by the one-year statute of limitations for assault under CPLR § 215(3) or the three-year statute of limitations for liabilities "imposed by statute" under CPLR § 214(2), statutory provisions that apply generally to myriad claims under New York law. *Engelman* held that such statutes of general applicability did not preempt the VGM: Section 215(3) did not preempt it because it pertains generally to a variety of tort and privacy actions, not specifically to the sort of conduct covered by the VGM (which "is in the nature of a civil rights cause of action"); and Section 214(2) did not preempt it because the CPLR specifically provided that statutes of limitations "listed in C.P.L.R. article 2" were inapplicable if "a different time is prescribed by law." 194 A.D.3d at 30, 32 (citing CPLR § 201). Neither rationale applies to the question of whether the ASA and CVA, which temporarily revived time-

barred VGM claims, preempt the VGM from reviving those same claims again. *Engelman* makes no mention of the ASA or the CVA, which explicitly apply "*[n]otwithstanding* any provision of law which imposes a period of limitation to the contrary." CPLR §§ 214-g, 214-j (emphasis added). And *Engelman* did not address the VGM's revival provision at all. Thus, *Engelman*'s holding is inapposite to the present question of whether the ASA's and CVA's claim revival provisions preempt the VGM's claim revival amendment.

*Gooding* is similarly inapposite. The *Gooding* court likewise did not discuss preemption of the VGM's claim revival provision. Rather, it explicitly stated that the VGM's claim revival amendment was *irrelevant* to its analysis of a VGM claim because, unlike Plaintiff's claim, the claim in *Gooding* never expired. 2022 WL 1104750, at *3.

Contrary to Plaintiff's contention the preemption question at issue here has never been addressed by an appellate court (state or federal); rather, it has, as far as Defendants are aware, only been addressed by two District court judges, and those two judges have reached different conclusions: Judge Kaplan unequivocally held the VGM revival amendment "is preempted by the state's adoption of the [CVA] and [ASA]," *Bellino*, 2024 WL 1344075, at *1, whereas Judge Clarke held the CVA does not preempt the VGM's revival window, *Combs*, 2024 WL 4987044, at *2; *Black*, 2024 WL 4335453, at *2-7. Confirming that this issue is unsettled, Judge Clarke recently certified this exact question for interlocutory appeal (Order at 1, *Doe v. Black*, No. 23-CV-6418 (JGLC) (S.D.N.Y. Nov. 8, 2024), ECF No. 153), a certification that may only be made where, as here, there is a "substantial ground for difference of opinion." *See* 28 U.S.C § 1292(b).

For the reasons set forth in the Opening Brief, *Bellino* has the better of the argument. Br. 5-8. Through the CVA and the ASA, the New York Legislature impliedly occupied the entire field of claim revival for sexual offense-related claims: together, the two statutes cover revival of

all claims and causes of action for misconduct tied to a sexual offense under the New York Penal Code §§ 130 *et seq*. *See* CPLR §§ 214-g, 214-j. The revival windows created by the ASA and the CVA cover *all* claims that fall within the statutes' purview—which unequivocally includes VGM claims. *See, e.g.*, *S.A. v. Bell*, No. 950279/2021, 2023 WL 8653131, at *1 (Sup. Ct. N.Y. Cnty. Dec. 14, 2023). In *Black*, Judge Clarke held that there was no field preemption because the CVA did not create bodies with investigatory or enforcement power or administrative or judicial review. 2024 WL 4335453, at *6. But there is no precedent requiring the creation of such bodies to find field preemption.

Field preemption exists where the legislature "enact[s] a comprehensive and detailed regulatory scheme in a particular area," *Albany Area Builders Ass'n v. Town of Guilderland*, 74 N.Y.2d 372, 377 (N.Y. 1989), which need not take a specific form. For example, in *People v. Cooper*, the New York Appellate Division held a state statute that implemented ongoing "monitoring, management and treatment of registered sex offenders, which includes the housing of registered sex offenders" created a "comprehensive regulatory scheme" that impliedly preempted a county statute requiring sex offenders to report housing information to the county police department. 49 Misc. 3d 132(A), 26 N.Y.S.3d 215 (2d Dep't, N.Y. App. Term. 2015). The New York State legislature did the same thing with the CVA and ASA: in addition to prospectively extending the statute of limitations for certain sexual offenses *and* opening revival windows designed to cover *all* sexual assault related civil claims, including VGM claims, the state legislature also instructed the judiciary to promulgate rules for adjudicating revived actions

brought pursuant to the CVA and the ASA (N.Y. Judiciary L. §§ 219-d, 219-e). Accordingly, as Judge Kaplan held, the VGM's revival window is preempted by the ASA.[3]

The affidavit of Senator Brad Hoylman-Sigal, upon which McKinney relies (ECF No. 36-1)—which does not even mention the ASA—does not change this conclusion: isolated statements by lawmakers after the passage of a law are not proper evidence of legislative intent, and are uniformly rejected. *See, e.g.*, *Heintz v. Jenkins*, 514 U.S. 291, 298 (1995) (rejecting statement of congressman made "not during the legislative process, but *after* the statute became law" which simply represents the views of one informed person on an issue about which others may (or may not) have thought differently"); *Southeastern Comm. Coll. v. Davis*, 442 U.S. 397, 411 n.11 (1979) ("[I]solated statements by individual Members of Congress . . . made after the enactment of the statute . . . cannot substitute for a clear expression of legislative intent." (citations omitted)).[4]

Plaintiff's VGM claim should be dismissed entirely.

## II. THERE IS NO BASIS ON WHICH TO HOLD THE CORPORATE DEFENDANTS LIABLE FOR THE ALLEGED CONDUCT

### A. The 2022 VGM Amendment Does Not Apply Retroactively to Pre-2022 Conduct

Plaintiff does not dispute that at the time of the conduct alleged in the Amended Complaint, the VGM did not apply to corporate entities. Rather, she argues that a subsequent amendment to the VGM in 2022 expanding liability to corporate entities should apply

---

[3] Plaintiff's argument that conflict preemption does not apply (Opp. 11-12) also fails. "[C]onflict preemption occurs when a local law prohibits what a state law explicitly allows, or when a state law prohibits what a local law explicitly allows." *Matter of Chwick v. Mulvey*, 81 A.D.3d 161, 168 (2d Dep't 2010). Because the CVA and ASA prohibited the revival of sexual assault related claims after August 14, 2021, and November 24, 2023, respectively (Br. 6), the VGM's revival window directly conflicts with those statutes.

[4] When the plaintiff in *Combs* submitted this same affidavit in connection with her opposition to the defendants' motion to dismiss, Judge Clarke struck it from the record. Order at 3, *Doe v. Combs et al.*, No. 23-CV-10628 (JGLC) (S.D.N.Y. Oct. 1, 2024), ECF No. 66.

retroactively to permit a VGM claim against the Corporate Defendants now. Opp. 13-15. There is no support for this position.

Every single court that has considered whether any provision of the VGM applies retroactively has unambiguously held that it does not. There is no dispute that a plaintiff may not bring a claim pursuant to the VGM that relies on allegations pre-dating the VGM's enactment in 2000. *See, e.g.*, *Louis v. Niederhoffer*, No. 23-cv-6470 (LTS), 2023 WL 8777015, at *1 (S.D.N.Y. Dec. 19, 2023) (dismissing VGM claim as to incident that pre-dated the VGM's enactment); *Adams v. Jenkins*, No. 115745/03, 2005 WL 6584554, at *1 (N.Y. Sup. Ct. Apr. 22, 2005) (same); Wolff Decl., Exs. A, B., *Stein et al. v. The Rockefeller Univ. Hosp.*, Index No. 159929/2023, at *3-4 (N.Y. Sup. Ct. Nov. 16, 2023) (same); *JL v. The Rockefeller Univ. Hosp.*, 2023 NY Slip Op 31877 [U], at *11-12 (N.Y. Sup. Ct. June 1, 2023) (same). The 2022 VGM amendment, including its purported revival window, "does not alter this conclusion." *Louis*, 2023 WL 8777015, at *1.

Consistent with the rationale of the foregoing cases, every court that has addressed whether the VGM's 2022 amendment applies retroactively has held that it does not. *See Bensky v. Indyke*, No. 24-cv-1204 (AS), 2024 WL 3676819, at *10 (S.D.N.Y. Aug. 5, 2024)[5]; *Combs*, 2024 WL 4987044, at *2-3. That is why, in a similar case involving a VGM claim based on pre-2022 conduct, the plaintiff recently sought and obtained leave from Judge Torres to voluntarily dismiss all corporate defendants, citing developments in the law that rendered those claims

---

[5] Plaintiff misleadingly contends *Bensky* is distinguishable because the at-issue conduct in that case predated the VGM's 2000 enactment. Opp. 15. That is not accurate. The plaintiff in *Bensky* based her VGM claim on conduct that spanned several years, some of which preceded and some of which postdated the VGM's enactment. 2024 WL 3676819, at *2. Judge Subramanian correctly held the VGM could not apply to conduct preceding its enactment, and *further* held it also could not apply to corporate entities alleged to have enabled conduct that postdated the VGM's enactment but predated the 2022 amendment because the 2022 amendment expanding liability to corporate entities did not apply retroactively. *Id.* at *10.

untenable. *See* Order, at 1, *Graves v. Combs et al.*, No. 24-cv-07201 (S.D.N.Y. Jan. 3, 2025), ECF No. 43. Plaintiff cites no contrary authority. *See* Opp. at 13-15. As both *Bensky* and *Combs* explain, the 2022 amendment substantively changed the VGM by expanding the scope of liability from only an alleged individual perpetrator to "a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender" (N.Y.C. Admin. Code § 10-1104). *Bensky*, 2024 WL 3676819, at *10; *Combs*, 2024 WL 4987044, at *2. Thus, Plaintiff's claim against the Corporate Defendants, which involves events prior to 2022, could proceed only if the 2022 amendment applied retroactively. *See Matter of Mia S.*, 179 N.Y.S. 3d 732, 735 (2d Dep't 2022).

But "statutes will not be given [retroactive] construction unless the language expressly or by necessary implication requires it." *Gottwald v. Sebert*, 40 N.Y.3d 240, 258 (N.Y. 2023). And nothing in the language of the VGM's 2022 amendment or the legislative history evinces such intent. *Combs*, 2024 WL 4987044, at *3. The witness testimony Plaintiff cites (Opp. 14-15) does not indicate otherwise—even if testimonial expressions of witnesses are reflective of legislative intent (they plainly are not)—the testimony merely reflects a desire to holding entities liable, not to reach backward in time to do so.

Contrary to Plaintiff's baseless assertion (Opp. 15), the 2022 amendment is not remedial such that it applies retroactively. Plaintiff's sole basis for arguing the amendment is remedial is that "the City Council conveyed a sense of urgency as it introduced [the VGM] nine days after the decision in *U.S. v. Morrison*" (Opp. 14)—but this "urgency" refers to the original passage of the VGM in 2000, not the 2022 amendment at issue here. Moreover, even a directive that a statute take immediate effect, "does not resolve the question of whether, under New York law, the amendment should be applied retroactively." *CFCU Cmty. Credit Union v. Hayward*, 552

F.3d 253, 261 (2d Cir. 2009).[6] No court has ever found any portion of the VGM to apply retroactively and there is no basis for this Court to do so here.

**B. The Facts Alleged Do Not State a Claim Against the Corporate Defendants**

The VGM claim against the Corporate Defendants fails for the additional reason that nothing in the AC supports holding any of the Corporate Defendants liable for the alleged assault. Instead of pleading, as required, acts or transactions undertaken by each Corporate Defendant giving rise to an inference that such entity "direct[ed], enable[d], participate[d] in, or otherwise conspire[d]" in a crime of gender-motivated violence (N.Y.C Admin Code § 10-1104), the AC lumps the entities together in group pleadings, alleging conclusorily that they all enabled the alleged assault because they all knew of Mr. Combs' purported propensity. Br. 12-13.

Notably absent from Plaintiff's Opposition are citations to factual allegations supporting an inference that any representative of any Corporate Defendant actually knew of any purported propensity prior to the alleged assault *or* any authority supporting her contention that an entity's alleged knowledge of an employee's or officer's purported propensity is sufficient to hold an entity liable under the VGM. Instead, Plaintiff argues lawsuits and media reports that emerged in 2023 and 2024 explain how each of the Corporate Defendants knew of a purported propensity some twenty years earlier,[7] and relies on cases involving claims of negligent supervision and the like – whose elements are nowhere near as exacting as the VGM's. *See* Opp. 16-18.

---

[6] In any event, "classifying a statute as remedial does not automatically overcome the strong presumption of prospectivity . . . ." *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (N.Y. 1998) (citation and quotation marks omitted).

[7] McKinney also references an undated Jet Magazine interview, alleging that Corporate Defendants should have known in 2003 about Mr. Combs' purported propensity to sexually assault because Mr. Combs said on some unspecified date: "I had a temper. That's why my friend started calling me Puffy.'" Opp. 17 (quoting AC ¶ 105). Even if this statement were alleged to have been made prior to the events in question (and it was not) and to particular representatives of each and every Corporate Defendant (it was not), no reasonable person would infer from such a gratuitous remark that the speaker engaged in "frequent illegal conduct against women" (Opp. 17).

Even if Plaintiff needed only to satisfy a negligence standard in this lawsuit, her claims would still fail. For example, in *Ormond v. Weinstein*, upon which Plaintiff heavily relies, the plaintiff identified specific high-ranking individuals employed by the corporate defendant who were aware of Weinstein's "propensity to commit sexual assault . . . *prior* to the assault at issue." 2024 N.Y. Misc. LEXIS 22470 (Sup. Ct. N.Y. Cnty. Aug. 19, 2024) (emphasis added). She also alleged that every aspect of her assault was made possible because of her business relationship with, and Weinstein's control of, Miramax. *See id.* at *5 (describing how plaintiff moved to New York because of Miramax's commitment to fund her project, lived in an apartment paid for by Miramax, and was assaulted in that apartment during a meeting to discuss Miramax's financing of her film). McKinney's pleading contains no such allegations. To the contrary, she alleges an unnamed "fashion designer" invited her and facilitated the introduction to Mr. Combs. AC ¶¶ 40, 48-50. The only connections Plaintiff alleges as to any of the Corporate Defendants are: Mr. Combs was an owner or employee of the entities; the alleged assault supposedly occurred on Daddy's House premises; and unnamed employees of "Bad Boy Records" (a term defined to include multiple entities)[8] *might* have been at the studio that night. AC ¶¶ 61, 65, 75-77. These allegations are insufficient to impute any liability to the Corporate Defendants. *See, e.g.*, *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251 (N.Y. 2002) (employer cannot be liable for acts of its employee "those acts were committed in furtherance of the employer's business and within the scope of employment"); *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (corporation not liable for owner's acts); *Cort v. Marshall's Dep't Store*, No. 14-cv-7385, 2015 WL 9582426, at *1, 5 (E.D.N.Y. Dec. 29, 2015) (that assault occurred on corporate premises was insufficient, without more, to hold corporation liable).

[8] Plaintiff offers no response to Defendants' argument that she impermissibly grouped her allegations against Bad Boy Entertainment LLC and Bad Boy Entertainment Holdings, Inc. Br. 14.

Accordingly, the Corporate Defendants must be dismissed.

## CONCLUSION

For all the reasons set forth above, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice.

Dated: New York, New York
January 7, 2025

SHER TREMONTE LLP

*Erica A. Wolff*

Erica A. Wolff
Michael Tremonte
Katie Renzler
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
EWolff@shertremonte.com
MTremonte@shertremonte.com
KRenzler@shertremonte.com

*Attorneys for Defendants Sean Combs, Bad Boy Entertainment LLC, Bad Boy Entertainment Holdings, Inc., Sean John Clothing LLC, and Daddy's House Recordings, Inc.*

**CERTIFICATION**

The undersigned hereby certifies that the Reply Memorandum of Law in Support of the Combs Defendants' Motion to Dismiss the Amended Complaint complies with the word limit set forth in Local Civil Rule 7.1 (c). The word count, exclusive of the caption, tables, and signature blocks, is 3,382 according to the word-processing system used to prepare the document.

Dated: January 7, 2025

*/s/ Erica A. Wolff*

Erica Wolff