# EXHIBIT B

FILED: NEW YORK COUNTY CLERK 06/09/2023 04:57 PM                INDEX NO. 950131/2020
NYSCEF DOC. NO. 52                                              RECEIVED NYSCEF: 06/01/2023

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

| PRESENT: | HON. ALEXANDER M. TISCH | PART | 18 | CVA |
|---|---|---|---|---|
| | Justice | | | |

-------------------------------------------------------------------X

J L,

                                           Plaintiff,

- v -

THE ROCKEFELLER UNIVERSITY, THE ROCKEFELLER INSTITUTE

                                        Defendants.

-------------------------------------------------------------------X

| INDEX NO. | 950131/2020 |
|---|---|
| MOTION DATE | 04/08/2021 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 23, 24, 25, 26, 27, 31, 32, 33, 34, 35, 36, 37, 38

were read on this motion to/for                                 DISMISS                       .

     Upon the foregoing documents, Defendant Rockefeller University a/k/a/ Rockefeller University Hospital f/k/a Rockefeller Institute Hospital (hereinafter, "Rockefeller") seeks an order (a) dismissing the negligent hiring claim of the Complaint's first cause of action pursuant to CPLR 3211(a)(7); and (b) dismissing the Complaint's third, sixth, seventh, eighth, and ninth causes of action in their entirety pursuant to CPLR 3211(a)(7) (Motion Seq. 002).

     Plaintiff alleges that he was a patient at Rockefeller between 1957 and 1966, when he was between seven and sixteen years old. Plaintiff alleges his appointments were with Dr. Reginald Archibald, a doctor employed by Rockefeller. Plaintiff alleges that during the medical appointments, he was repeatedly sexually assaulted by Dr. Archibald, and that Dr. Archibald committed the sexual offenses under the guise of his "physical exams" for Rockefeller. Plaintiff alleges that Rockefeller knew or should have known that Dr. Archibald was using his position with the hospital to abuse minors and yet took no action.

950131/2020   L, J vs. ROCKEFELLER UNIVERSITY                   Page 1 of 13
Motion No.  002

1 of 13

Rockefeller now moves for dismissal of the complaint, arguing, *inter alia*, that Plaintiff has not sufficiently alleged that Rockefeller was on notice at the time of the abuse, and that numerous causes of action are misplaced or duplicative as asserted.

## DISCUSSION

In determining a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7), a court's role is deciding "whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail" (*African Diaspora Maritime Corp. v Golden Gate Yacht Club*, 109 AD3d 204 [1st Dept 2013]; *Siegmund Strauss, Inc. v East 149th Realty Corp.*, 104 AD3d 401 [1st Dept 2013]). The standard on a motion to dismiss a pleading for failure to state a cause of action is not whether the party has artfully drafted the pleading, but whether deeming the pleading to allege whatever can be reasonably implied from its statements, a cause of action can be sustained (*see Stendig, Inc. v Thorn Rock Realty Co.*, 163 AD2d 46 [1st Dept 1990]; *Leviton Manufacturing Co., Inc. v Blumberg*, 242 AD2d 205 [1st Dept 1997] [on a motion for dismissal for failure to state a cause of action, the court must accept factual allegations as true]).

When considering a motion to dismiss for failure to state a cause of action, the pleadings must be liberally construed (see CPLR 3026; *Siegmund Strauss, Inc.*, 104 AD3d 401). In deciding such a motion, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs 'the benefit of every possible favorable inference,'" and "determine only whether the facts as alleged fit into any cognizable legal theory" (*Siegmund Strauss, Inc.*, 104 AD3d 401; *Nonnon v City of New York*, 9 NY3d 825 [2007]; *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). However, "allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not" presumed to be true or accorded every

950131/2020  L, J vs. ROCKEFELLER UNIVERSITY                                Page 2 of 13
Motion No. 002

2 of 13

favorable inference (*David v Hack*, 97 AD3d 437 [1st Dept 2012]; *Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 81 [1st Dept 1999], *aff'd* 94 NY2d 659 [2000]; *Kliebert v McKoan*, 228 AD2d 232 [1st Dept 1996], *lv denied* 89 NY2d 802 [1996]). "In deciding such a pre-answer motion, the court is not authorized to assess the relative merits of the complaint's allegations against the defendant's contrary assertions or to determine whether or not plaintiff has produced evidence to support his claims" (*Salles v Chase Manhattan Bank*, 300 AD2d 226, 228 [1st Dept 2002]).

Rather, where a motion to dismiss is directed at the sufficiency of a complaint, the plaintiff is afforded the benefit of a liberal construction of the pleadings: "The scope of a court's inquiry on a motion to dismiss under CPLR 3211 is narrowly circumscribed," the object being "to determine if, assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable cause of action" (*P.T. Bank Central Asia v Chinese Am. Bank*, 301 AD2d 373, 375-376 [1st Dept 2003]; *see Rovello v Orofino Realty Co.*, 40 NY2d 633, 634 [1976]).

It is the movant who has the burden to demonstrate that, based upon the four corners of the complaint liberally construed in favor of the plaintiff, the pleading states no legally cognizable cause of action (*see Leon*, 84 NY2d at 87-88; *Guggenheimer*, 43 NY2d at 275; *Salles*, 300 AD2d at 228).

**Negligent Hiring, Retention, Supervision and/or Direction**

A claimant can maintain a cause of action for negligent retention by adequately alleging that the "employer knew or should have known of the employee's propensity for the conduct which caused the injury" and nevertheless continued the employee's service (*Bumpus v New York City Tr. Auth.*, 47 AD3d 653, 654 [2d Dept 2008] [internal quotation marks and citation omitted]; *see*

950131/2020 L, J vs. ROCKEFELLER UNIVERSITY
Motion No. 002
Page 3 of 13

3 of 13

also *Jackson v New York Univ. Downtown Hosp.*, 69 AD3d 801, 801–02 [2d Dept 2010]; *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 AD2d 159, 161, 163 [2d Dept 1997]).

While a plaintiff must allege that the employer was on actual or constructive notice, "there is no statutory requirement that causes of action sounding in negligent hiring, negligent retention, or negligent supervision be pleaded with specificity" (*Kenneth R.*, 229 AD2d at 163). Liability for negligent hiring is based not on the tortious conduct of the employee but on the negligence of the defendant-employer for failures involving the risk of harm by the employee to others (*see, e.g. Ford v Gildin*, 200 AD2d 224 [1st Dept 1994]).

Here, Plaintiff has alleged that Rockefeller should have known of the abuse and has cited media reports purporting to demonstrate that Rockefeller's leadership was explicitly made aware of Dr. Archibald's abuse. For instance, Plaintiff cites a 2018 article from the New York Times that details how Rockefeller conducted an internal investigation in or around 2004, while Dr. Archibald was still alive, yet still did not reach out to potential victims or contact local prosecutors.

Rockefeller argues that Plaintiff's negligent hiring claim still fails as Plaintiff has not alleged any facts suggesting contemporaneous notice during Plaintiff's alleged abuse. However, Plaintiff has also specifically alleged that Rockefeller's staff members "were aware of Archibald's sexual abuse at the time he was abusing children" and "were aware of the nude and pornographic photographs Archibald was taking of his victims while his victims were still patients of the hospital." Plaintiff is not required to prove more specific details at this juncture, particularly given that discovery has yet to commence. While Rockefeller argues these allegations are vague and unsupported, Plaintiff is not required to provide extensively detailed

950131/2020 L, J vs. ROCKEFELLER UNIVERSITY
Motion No. 002
Page 4 of 13

4 of 13

allegations at this juncture in the litigation, where discovery has not yet commenced, and Rockefeller has introduced no evidence conclusively establishing that the allegations are false.

Accordingly, the branch of Rockefeller's motion seeking dismissal of Plaintiff's first causes of action is denied.

**Breach of duty *in loco parentis***

Plaintiff alleges that as a minor, his parents entrusted him to the control of Rockefeller for medical treatment, and therefore Rockefeller owed him a duty to act *in loco parentis* and prevent foreseeable injuries.

There is a branch of case law under which schools are tasked with a duty to adequately supervise the students in their charge and are liable for foreseeable injuries proximately related to their failure to provide adequate supervision (*see Nash v Port Wash. Union Free School Dist.*, 83 AD3d 136, 149-150 [2d Dept 2011]; *Doe v Department of Educ. of City of N.Y.*, 54 AD3d 352 [2d Dept 2008]; *see also Palmer v City of New York*, 109 AD3d 526, 527 [2d Dept 2013], *citing Mirand v City of New York*, 84 NY2d 44, 49 [1994]; *McLeod v City of New York*, 32 AD3d 907 [2d Dept 2006]). Based on the doctrine that school districts act *in loco parentis* with respect to their minor students (*see Barragan v City Sch. Dist. of New Rochelle*, 120 AD3d 728 [2d Dept 2014]; *Stinson v Roosevelt U.F.S.D.*, 61 AD3d 847, 847-848 [2d Dept 2009]) because they take physical custody of them (*see Giresi v City of New York*, 125 AD3d 601, 602-603 [2d Dept 2015]), schools are responsible for supervising their students with the same degree of care as a parent of ordinary prudence would exercise in comparable circumstances (*id.*, citing *Mirand*, 84 NY2d at 49). "The concept of *in loco parentis* is the fountainhead of the duty of care owed by a school to its students" (*Williams v Weatherstone*, 23 NY3d 384, 403 [2014], citing *Mirand*, 84

950131/2020  L, J vs. ROCKEFELLER UNIVERSITY
Motion No. 002

Page 5 of 13

5 of 13

NY2d at 49 ["[t]he duty owed derives from the simple fact that a school, in assuming physical custody and control over its students, effectively takes the place of parents and guardians"]).

It does not appear, however, that the doctrine of *in loco parentis* can be applied here, given that Rockefeller is not a school and was not caring for Plaintiff on any sort of long-term or temporary basis. Nevertheless, even if the doctrine were somehow applied to Rockefeller, *in loco parentis* defines the duty owed within the context of a negligence cause of action, and therefore this claim would be duplicative of Plaintiff's (unchallenged) second cause of action for negligence.

Accordingly, the branch of Rockefeller's motion seeking dismissal of Plaintiff's third cause of action is granted.

**Intentional and Negligent Infliction of Emotional Distress**

Plaintiff asserts causes of action against Rockefeller for both Negligent Infliction of Emotional Distress (NIED) and Intentional Infliction of Emotional Distress (IIED).

Typically, a cause of action for NIED "must be premised on conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety" (*Padilla v Verczky- Porter*, 66 AD3d 1481, 1483 [4th Dept 2009]). However, New York courts have held that "a cause of action for infliction of emotional distress is not allowed if [it is] essentially duplicative of tort . . . causes of action." (*Wolkstein v Morgenstern*, 275 AD2d 635, 637 [1st Dept 2000]). Here, the allegations set forth under Plaintiffs' NIED claim are duplicative of the negligence causes of action — namely, that Rockefeller breached its duty to Plaintiff by failing to supervise Dr. Archibald and protect Plaintiff from danger. Given that Plaintiff may recover for emotional distress caused by this breach under his other negligence-based causes of action, the NIED claim is unnecessary (*see Wilczynski v Gates Community Chapel of Rochester,*

950131/2020  L, J vs. ROCKEFELLER UNIVERSITY
Motion No. 002
Page 6 of 13

6 of 13

*Inc.*, 2022 WL 446561, *3, 2022 US Dist LEXIS 26113, *8-9 [WD NY, Feb. 14, 2022, No. 6:20-CV-06616 (EAW)] [dismissing an NIED claim as duplicative of the negligence, negligent supervision, hiring, and retention claims]).

Under his claim for Intentional Infliction of Emotional Distress (IIED), Plaintiff argues that Rockefeller "knew and/or disregarded the substantial probability" that Dr. Archibald's conduct would cause severe emotional distress.

The elements of IIED are "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (*Chanko v. American Broadcast Companies, Inc.*, 27 NY3d 46, 56 [2016]). However, as with NIED, "a cause of action for intentional infliction of emotional distress should not be entertained where the conduct complained of falls well within the ambit of other traditional tort liability" (*Di Orio v Utica City School District Board of Education*, 305 AD2d 1114, 1115-16 [4th Dept 2003]).

Plaintiff argues IIED addresses a separate type of misconduct from his negligence-based claims. However, the allegation under Plaintiff's IIED claim, that Rockefeller was on notice of Dr. Archibald's abuse and took no action, still essentially mirrors the allegations under his other claims. It is well settled that any causes of action based on the same facts and theories, and seeking identical damages, are duplicative of one another and, as such, must be dismissed (*see Wolkstein*, 275 AD2d at 636-37). Given that that the allegation under Plaintiff's IIED claim is

950131/2020  L, J vs. ROCKEFELLER UNIVERSITY
Motion No. 002

Page 7 of 13

7 of 13

based on the same set of facts and circumstances as those under Plaintiff's negligence claims which are moving forward, the cause of action for IIED should also not be entertained.

Accordingly, the branches of Rockefeller's motion seeking dismissal of Plaintiff's causes of action for NIED and IIED are granted.

**Breach of statutory duty to report sexual abuse pursuant to New York Social Services Law §§ 413, 420**

Plaintiff's eighth cause of action is premised on the notion that Rockefeller breached its statutory duty to report abuse under Social Services Law §§ 413 and 420.

Pursuant to Social Services Law § 413, mandated reporters, which include but are not limited to physicians and "hospital personnel engaged in the admission, examination, care or treatment of persons," are required to report "when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child." Social Services Law § 420(2) states that "Any person, official or institution required by this title to report a case of suspected child abuse or maltreatment who knowingly and willfully fails to do so shall be civilly liable for the damages proximately caused by such failure." "The Legislature enacted Social Services Law § 420 which expressly allows a private cause of action for money damages upon the failure of any person, official or institution required by title 6 to report a case of suspected child abuse or maltreatment" (*Rivera v County of Westchester*, 31 Misc 3d 985, 994 [Westchester Co Sup Ct 2006]). "An injured child may assert a cause of action for damages under Social Services Law § 420 for alleged violations of sections 413 and 417, which were enacted to protect children from physical abuse" (*Young v Campbell*, 87 AD3d 692, 694 [2nd Dept 2011], *lv denied* 18 NY3d 801 [2011]).

Here, a close reading of the statues indicates that Rockefeller was not required to report the alleged abuse.

950131/2020 L, J vs. ROCKEFELLER UNIVERSITY
Motion No. 002

Page 8 of 13

8 of 13

The 1972 amendment of the Family Court Act, in relevant part, provides that a

> "[p]erson legally responsible' includes the child's custodian, guardian, any other person responsible for the child's care at the relevant time. Custodian may include any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child"

(L 1972, ch 1015, § 2 [g]; *see also* L 1973, ch 1039, § 412 [3] [SSL defining "[p]erson legally responsible" for a child . . . as defined by the Family Court Act]).

In this regard, the courts have consistently held that the Family Court Act definition of "other person legally responsible" for a child's care pertains to "parental responsibility or its functional equivalent *within a family setting* in terms of the propriety of care being rendered to the child" (*In re Jessica C.*, 132 Misc 2d 596, 600 [Fam Ct, Queens County 1986] [emphasis added]). The definition "was not intended to include those unrelated to the family context; performing child care services outside of the household such as *doctors,* teachers, and baby-sitters" (*see id.* [emphasis added]). "A baby-sitter or child care provider who provides such services outside the parental home is not a 'person legally responsible'" (*In re Robert J.*, 178 AD2d 1004, 1004 [4th Dept 1991]). The definition pertains to a person who "acts as the functional equivalent of a parent in a familial or household setting," and does not pertain to "persons who assume fleeting or temporary care of a child . . . or those persons who provide extended daily care of children in institutional settings, such as teachers" (*In re Yolanda D.*, 88 NY2d 790, 796 [1996]).

Here, the alleged abuse in the 1950s and 1960s predates the implementation of the relevant Social Services Law statutes in 1973. Even if that were not the case, it cannot be argued Dr. Archibald was a person legally responsible for Plaintiff's care within the definition of the Family Court Act. Therefore, even if the Social Services Law provisions were in effect during the abuse, Rockefeller was not required to report the alleged misconduct.

950131/2020 L, J vs. ROCKEFELLER UNIVERSITY
Motion No. 002

Page 9 of 13

9 of 13

As such, the branch of Rockefeller's motion seeking dismissal of Plaintiff's eighth cause of action is granted.

**Committing and enabling gender violence**

Plaintiff's ninth cause of action alleges that Dr. Archibald's misconduct constituted gender violence under N.Y.C. Admin. Code Chapter 9 §§ 8-901 - 8-907, and Rockefeller is thus liable for enabling gender violence under the City of New York's Victims of Gender-Motivated Violence Protection Act (GVA).

After the United States Supreme Court decision in *United States v Morrison* (529 US 598 [2000]) invalidated the federal civil rights remedy for gender-motivated crimes in the federal Violence Against Women Act (VAWA) as unconstitutional, the New York City Council adopted its own version of VAWA under the GVA title. The GVA, which applies only in New York City, establishes a private right of action and a civil remedy for victims of gender violence, such as domestic violence and rape. Section 10-1102 of the GVA declares the intent to fill the "void" left by the Supreme Court by providing a broad, private right of action and remedies to redress injuries resulting from gender-motivated violence. The predicate for invoking the act is the commission of a "crime of violence motivated by gender" as defined in Section 10-1103. The crime must have been committed because of gender and due, at least in part, to an animus based on the victim's gender.

The Appellate Division, First Department has recently held that allegations of rape or sexual assault are in and of themselves "sufficient to allege animus on the basis of gender" under the GVA (*Breest v Haggis*, 180 AD3d 83, 94 [1st Dept 2019]). "Without consent, [sexual assault is] a violation of the victim's bodily autonomy and an expression of the perpetrator's contempt

950131/2020  L, J vs. ROCKEFELLER UNIVERSITY
Motion No. 002

Page 10 of 13

10 of 13

for that autonomy. Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself" (*id.*).

Rockefeller argues in part that Plaintiff's claim should be dismissed because the GVA applies only to individuals, given that Section 10-1104 of the GVA, entitled "Civil cause of action," states only that "any person claiming to be injured by an individual who commits a crime of violence motivated by gender has a cause of action against such individual." However, the current text of § 10-1104 provides that "any person claiming to be injured by a *party* who commits, *directs, enables, participates in, or conspires* in the commission of a crime of violence motivated by gender has a cause of action *against such party*" (New York City, N.Y., Code § 10-1104 [emphasis added]). The GVA thus clearly provides for a cause of action against not just individual perpetrators but rather any entity that is alleged to have facilitated the gender-based crime.

Notwithstanding the foregoing, as Rockefeller separately argues, the CVA could not have revived a claim Plaintiff may have under the GVA, as the GVA was not enacted until 2000, decades after Plaintiff alleges he was abused in the 1950s and 1960s. It is a "fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 584 [1998], citing *Landgraf v USI Film Prods.*, 511 US 244, 265 [1994] ["the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic"]). Neither the text nor legislative history of the GVA suggests that when implemented in 2000, it was intended to apply retroactively. In 2005, this court (Hon. Diane A. Lebedeff) held that the GVA, "which creates a new substantive cause of action with a long statute of limitations,

950131/2020  L, J vs. ROCKEFELLER UNIVERSITY
Motion No. 002                                                                                      Page 11 of 13

11 of 13

and does not provide for retroactive or immediate effectiveness, is not the type of statute that would be given retroactive effect" and thus did not apply to allegations of domestic abuse that occurred in the 1990s (*Adams v Jenkins*, No. 115745/03, 2005 WL 6584554 [Sup Ct, NY County Apr. 22, 2005]).

Interestingly, in January 2022, the New York City Council enacted an amendment[1] to the GVA that, similar to the CVA, modified the law to provide survivors with more opportunities to come forward with claims. The 2022 amendment created a two-year lookback window for survivors of gender-motivated violence to file lawsuits, regardless of when the assault occurred. The revival window opened March 1, 2023 and will close March 1, 2025. As such, it appears Plaintiff now has the opportunity to separately pursue a GVA action. However, the GVA claim still cannot proceed under Plaintiff's 2020 CVA action sub judice. Therefore, Rockefeller's application to dismiss the ninth cause of action is granted.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED that the motion of Defendant Rockefeller University a/k/a/ Rockefeller University Hospital f/k/a Rockefeller Institute Hospital ("Rockefeller") for an order (a) dismissing the negligent hiring claim of the Complaint's first cause of action pursuant to CPLR 3211(a)(7); and (b) dismissing the Complaint's third, sixth, seventh, eighth, and ninth causes of action in their entirety pursuant to CPLR 3211(a)(7) (Motion Seq. 002) is granted to the extent that:

(i) The third cause of action for Breach of Duty In Loco Parentis is dismissed;

(ii) the sixth cause of action for Negligent Infliction of Emotional Distress is dismissed;

---

[1] *See Int. No. 2372-B*, https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=5072017&GUID=BA4C2A62-23E0-4AB2-B3A1-AC18F53C9993.

950131/2020  L, J vs. ROCKEFELLER UNIVERSITY
Motion No. 002
Page 12 of 13

12 of 13

(iii) the seventh cause of action for Intentional Infliction of Emotional Distress is dismissed;

(iv) the eighth cause of action for Breach of Statutory Duty to Report Sexual Abuse under Soc. Serv. Law SS 413, 420 is dismissed;

(v) the ninth cause of action for committing and enabling gender violence is dismissed;

and the motion is otherwise denied; and it is further

ORDERED that counsel for Plaintiff shall serve a copy of this order, along with notice of entry, on all parties within 10 days; and it is further

ORDERED that the parties shall proceed with discovery pursuant to CMO No. 2, Section IX (B) (1) and submit a first compliance conference order within 60 days from entry of this order.

| 5/25/2023 | | | |
|---|---|---|---|
| DATE | | | ALEXANDER M. TISCH, J.S.C. |
| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
| | ☐ GRANTED    ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

950131/2020  L, J vs. ROCKEFELLER UNIVERSITY
Motion No. 002

Page 13 of 13

13 of 13